## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Ranjit Singh, et al.,** | **Case No. 1:20cv799** |
| **Plaintiffs,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **United States of America, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants** | |

This matter concerns the denial of a Form I-130 Petition for Alien Relative ("Form I-130 Petition") filed by Plaintiff Kristine Singh (hereinafter "Ms. Singh") on behalf of her husband Plaintiff Ranjit Singh (hereinafter "Mr. Singh"). Ms. Singh's Form I-130 Petition was denied by the United States Citizenship and Immigration Services ("USCIS") and the denial was affirmed by the Board of Immigration Appeals ("BIA"). Plaintiffs seek review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

Currently pending is the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants United States of America; William P. Barr, Attorney General of the United States; Chad Wolf, Acting Secretary of the Department of Homeland Security ("DHS"); Kenneth Cuccinelli, Senior Official Performing Duties of the Director of USCIS; Anna Chau, District Director of USCIS District N12; and Karyn Zarlenga, Cleveland Field Office Director of USCIS.[1] (Doc. No. 5.) Plaintiffs filed a Brief in Opposition on August 10, 2020, to which Defendants replied on August 24,

---

[1] In the Complaint, Plaintiffs name Mark Koumans as the Director of USCIS and Mark Hansen as the District Director of USCIS. (Doc. No. 1.) Pursuant to Fed. R. Civ. R. 25(d), Kenneth Cuccinelli and Anna Chau are substituted in place of these Defendants, respectively. *See* Doc. No. 5 at p. 1.

2020.  (Doc. Nos. 6, 7.)  Plaintiffs thereafter filed a Response to Defendants' Reply, which Defendants have moved to strike.  (Doc. Nos. 8, 9.)

For the following reasons, Defendants' Motion to Strike (Doc. No. 9) is DENIED. Defendants' Motion to Dismiss (Doc. No. 5) is GRANTED IN PART and DENIED IN PART, as set forth herein.

## I.    Background

The Complaint contains the following factual allegations.  In September 1990, Mr. Singh entered the United States without inspection at or near Brownsville, Texas.  (Doc. No. 1 at ¶ 15.) Eleven years later, in 2001, Mr. Singh married Heidi Newrones (hereinafter "Ms. Newrones"), a United States citizen.  (*Id.* at ¶ 16.)  Ms. Newrones subsequently filed a Form I-130 Petition on Mr. Singh's behalf, and Mr. Singh concurrently filed a Form I-485 Application to Register Permanent Residence or Adjust Status.[2]  (*Id.*)

Mr. Singh's and Ms. Newrones's marriage came to an end in 2003.  Specifically, a Petition for Dissolution of Marriage was filed on June 11, 2003 and an Entry and Decree of Dissolution of Marriage was thereafter issued on August 28, 2003.  (*Id.* at ¶ 17.)  Two years later, in August 2005, Ms. Newrones's Form I-130 Petition was denied "as the marriage between Mr. Singh and Ms. Newrones was terminated."  (*Id.* at ¶ 18.)  In addition, Mr. Singh's Form I-485 Petition was administratively closed "as USCIS did not have jurisdiction to adjudicate the application, as Mr.

---

[2] As discussed *infra*, the Immigration and Nationality Act ("INA") provides that U.S. citizens may file a Form I-130 petition for classification of their alien spouse as "immediate relative status."  8 U.S.C. § 1154.  When a United States citizen files a Form I-130 Petition, the government is required to review and adjudicate the petition.  8 U.S.C. §§ 1151(b)(2)(A)(i), 1154.  If the Form I-130 Petition is approved, the non-citizen spouse may apply for lawful permanent resident status.  *See* 8 U.S.C. § 1255(a).  *See Makhamreh v. Attorney General Dep't of Justice,* 2020 WL 6146593 at * 4 (S.D. Ohio Oct. 20, 2020); *Sholanke v. U.S. Citizenship & Immigration Services*, 2020 WL 1452449 at *4 (N.D. Ohio March 25, 2020).

2

Singh was still under the jurisdiction of the Immigration Judge."  (*Id.*)  *See also* Doc. No. 1-3 at PageID# 14.

Several years later, on May 6, 2013, Mr. Singh married Plaintiff Kristine Singh (then-known as Kristine Vincent) in Cleveland, Ohio.  (*Id.* at ¶ 19.)  Ms. Singh subsequently filed the instant Form I-130 Petition on Mr. Singh's behalf.  (*Id.*)  Attachments to the Complaint indicate that Ms. Singh submitted various evidence in support of the Petition, including (1) joint checking account statements; (2) bank cards; (3) a copy of a lease agreement for Plaintiffs' purported marital residence; (4) various bills in Mr. Singh's name; (5) a Verizon wireless call log; (6) copies of Plaintiffs' marriage license and marriage record; (7) a copy of the Separation Agreement and Entry and Decree of Dissolution of Marriage between Mr. Singh and Ms. Newrones; (8) six notarized statements attesting to the validity of Plaintiffs' marriage; and (9) copies of various photographs.  *See* Doc. No. 1-3 at PageID#s 14-15.

In March 2016, Mr. and Ms. Singh appeared for an interview with an Immigration Services officer in connection with the Form I-130 Petition.  (Doc. No. 1 at ¶ 20.)  Based on statements made by Plaintiffs during the interview, and USCIS's review of the evidence submitted, USCIS determined that "the testimony and documentary evidence in the record did not establish the claimed relationship" between Mr. and Ms. Singh.  (Doc. No. 1-3 at PageID# 15.)  USCIS therefore referred Ms. Singh's Form I-130 Petition for "further investigation regarding the bona fides of [Plaintiffs'] current marriage and [Mr. Singh's] prior marriage to Heidi Newrones."  (*Id.*)

"Unbeknownst to Plaintiffs," immigration officials subsequently contacted Ms. Newrones in August 2016 regarding her previous marriage to Mr. Singh.  (Doc. No. 1 at ¶ 21.)  USCIS later summarized its conversation with Ms. Newrones as follows:

> USCIS officers spoke with the beneficiary's prior spouse, Heidi Newrones.  Newrones stated that she met the beneficiary through a friend who worked with the beneficiary's

3

cousin and had known him for seven years prior to the marriage.  She admitted the beneficiary asked her several times to marry him as a favor before she complied.  She stated that she felt bad and was concerned for his safety if he returned back to India.  She stated they signed a lease together at 147 Deerfield Lane, Aurora, Ohio, however the beneficiary never moved in with her.  She stated the beneficiary lived in Maple Heights, exact address was unknown.  She stated the beneficiary paid half the rent.  She stated the marriage was never consummated and a bona fide girlfriend/boyfriend relationship never existed and admitted it was not a real marriage.  She stated that she was never paid to marry the beneficiary and admitted to being in a relationship with her current spouse during the entire marriage.

(Doc. No. 1-3 at PageID#s 15-16.)  In the Complaint, Plaintiffs allege that Ms. Newrones was coerced into making the above statements, alleging that "immigration officials confronted Ms. Newrones, accused her of fraud, and threatened her with fines and jail time if she did not admit her marriage to Mr. Singh was a sham."  (Doc. No. 1 at ¶ 21.)  In addition, Plaintiffs allege that, at the time of her interview with USCIS, Ms. Newrones was in severe pain and awaiting back surgery.  (*Id.*)

Attachments to the Complaint indicate that USCIS also conducted an unannounced visit to Plaintiffs' marital residence as part of its further investigation regarding Ms. Singh's Form I-130 Petition.  (Doc. No. 1-3 at PageID# 16.)  The Immigration officers noted that Mr. Singh was not at the residence at the time of the visit and, further, that a visual inspection of the residence revealed "minimum [sic] personal belongings" of Mr. Singh.[3]  (*Id.* at PageID#s 16-17.)  The officers noted that there were no daily transactions or withdrawals in the Plaintiffs' joint checking account and that Ms. Singh admitted she had a personal account at a different bank which she used on a daily basis.  (*Id.*)  The USCIS officers then visited the home of Ms. Singh's mother, Linda Abood.  (*Id.* at PageID# 17.)  According to the officers, Ms. Abood made several statements that contradicted statements made

---

[3] During the March 2016 interview, Plaintiffs stated that Mr. Singh worked in Akron and that he sometimes spent the night in Akron with a friend because he (Mr. Singh) did not have a driver's license and Ms. Singh did not drive on the highway.  (Doc. No. 1-3 at PageID# 15.)  Ms. Singh reiterated this information during the officers' unannounced visit.  (*Id.* at PageID# 16.)

by Ms. Singh.  (*Id.*)  Lastly, the USCIS officers visited one of Plaintiffs' neighbors.  (*Id.*)  This neighbor was able to identify Ms. Singh and her two children but did not recognize a photo of Mr. Singh.  (*Id.*)

On August 10, 2017, USCIS issued a Notice of Intent to Deny ("NOID") Ms. Singh's Form I-130 Petition.  (*Id.* at ¶ 22.)  Therein, the USCIS advised Ms. Singh that "the evidence supporting the Form I-130 Petition was insufficient to establish eligibility for the benefit sought."  (Doc. No. 1-3 at PageDI#s 17-18.)  Plaintiffs do not attach the NOID to the Complaint; however, the subsequent decision of the USCIS denying the Petition indicates that the NOID specifically cited the "discrepancies and evidentiary shortcomings" discussed above and provided Plaintiffs the opportunity to respond.  (*Id.* at PageID# 18.)

On September 18, 2017, Plaintiffs responded to the NOID and submitted additional pieces of evidence in support of the Petition, including (1) a brief from Plaintiffs' attorney; (2) copies of joint bank statements and personal money orders; (3) utility bills; and (4) affidavits from Ms. Singh, Mr. Singh, and Ms. Singh's son M. R.  (Doc. No. 1 at ¶ 23; Doc. No. 1-3 at PageID# 18.)  In addition, on May 2, 2018, Plaintiffs submitted additional evidence in support of the Petition, after requesting and receiving information in response to a Freedom of Information Privacy Act ("FOIA") request.  (Doc. No. 1-3 at PageID# 18.)  The additional evidence submitted in support of the Petition included the following:  (1) a brief from Plaintiffs' attorney; (2) copies of letters from USCIS's FOIA Operations division; (3) copies of six redacted affidavits obtained via Plaintiffs' FOIA request; and (4) copies of an Immigration Officer's notes, also obtained via the FOIA request.  (*Id.*)

5

According to USCIS's summary,[4] in his affidavit, Mr. Singh averred that he did not marry either Ms. Newrones or Ms. Singh for immigration purposes.  (*Id*. at PageID# 19.)  He explained that he did not have substantial personal items at his marital residence with Ms. Singh "as he sometimes remains in Akron because of work."  (*Id*.)  He further stated that there were, in fact, other personal items of his in the marital residence that USCIS did not see during the unannounced visit.  (*Id*.) Likewise, in her affidavit, Ms. Singh insisted that she and Mr. Singh are in a *bona fide* relationship. (*Id.* at PageID# 18.)  She explained that, due to several health issues, she is unable to drive Mr. Singh back and forth from his job in Akron and, therefore, many nights he has to stay in Akron.  (*Id.* at PageID# 18.)  Ms. Singh indicated that she and Mr. Singh do, in fact, regularly use their joint bank account and, further, that many of Mr. Singh's personal belongings are located at their marital residence.  (*Id.*)  Finally, Ms. Singh indicated that her mother (Ms. Abood) may have been confused by the Immigration officers' questions, and that the neighbor may not have ever seen Mr. Singh because of his (Mr. Singh's) work schedule in Akron.  (*Id.*)

On July 13, 2018, USCIS issued a lengthy decision in which it denied Ms. Singh's Form I-130 Petition.  (Doc. No. 1 at ¶ 23.)  Specifically, after discussing all of the above in detail, the USCIS determined that (1) "the record contains substantial and probative evidence demonstrating that [Mr. Singh] married Heidi Newrones for the purpose of evading the immigration laws;" and (2) "you have failed to demonstrate by a preponderance of the evidence that you and your spouse have entered into

---

[4] The Court does not have the Administrative Record before it at this stage of the proceedings, and Plaintiffs do not attach the affidavits in support of Ms. Singh's Form I-130 Petition to the Complaint.  The above summary of these affidavits is taken from the July 30, 2018 USCIS decision denying the Petition, which is attached to the Complaint as Doc. No. 1-3. Neither party argues that this Court is precluded from considering the attachments to the Complaint (including the July 30, 2018 USCIS decision) in resolving the instant motion.  *See Bassett v. National Collegiate Athletic Ass'n.,* 528 F.3d 426, 430 (6th Cir.2008) (finding that, in ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." )

a *bona fide* marital relationship and not for the purpose of obtaining immigration benefits for your spouse." (Doc. No. 1-3 at PageID# 20.)

On August 9, 2018, Plaintiffs timely appealed the USCIS decision to the Board of Immigration Appeals ("BIA"). (Doc. No. 1 at ¶ 24.) On September 10, 2018, Plaintiffs' counsel submitted a brief in support of the appeal, which included additional evidence in support of Ms. Singh's Petition. (*Id*. at ¶ 25.) This additional evidence included (1) affidavits from Ms. Newrones, Mr. Singh, and Ms. Singh; (2) a lease agreement; (3) letters from loved ones; and (4) utility bills, joint bank account statements, and an auto insurance policy. (*Id.*)

Plaintiffs attach Ms. Newrones's affidavit as an Exhibit to the Complaint. It is dated August 30, 2018 and provides (in relevant part) as follows:

1. I was formerly married to Ranjit Singh. We later divorced and I then married my current husband, and took his last name, "Fredrickson."

2. I married Ranjit in good faith, and because I loved him.

3. As I asserted to the USCIS-- nobody paid me or gave me anything of value to induce me to marry Ranjit.

\*\*\*

6. The USCIS officer accused me of entering into a sham marriage to help Ranjit get his "green card." The USCIS officer accused me of "defrauding the USA" or something like that, and threatened me with jail time, fines, or both. I was in severe pain and awaiting back surgery. I was weak and felt alone. I was vulnerable and felt threatened. The USCIS officer saw my weakness and coerced me into saying things that were not true.

7. Hence I want to set the record straight:

   a. I did live with Ranjit; we had a lease for our apartment at 147 Deerfield Lane in Aurora, OH. As my husband, Ranjit did pay half the rent.

b. I did consummate my marriage with Ranjit; I lied earlier because I felt threatened and ashamed, thinking that USCIS would besmirch my reputation before my family and children.

c. I shared a joint bank account with Ranjit at First National Bank of Ohio, (now PNC Bank), Aurora, Ohio into which we deposited money we earned and paid our bills.  Ranjit did contribute to our household.

d. My children loved Ranjit; he used to do things with them, such as take them to get ice cream as a treat.  My children still love him.

e. My sister . . . knew I was married to Ranjit.

f. I did not marry Ranjit as a "favor," as the USCIS states.  I knew Ranjit for several years before we got married.  I got to know and love the kind of man that he was.

g. Ranjit told me openly about his immigration status, because he did not want to "surprise" me or make me feel like he had married me just so I could help him.  I married Ranjit because I loved him and because when you love someone, you want to help them.

8.  Our marriage fell apart because of Ranjit's work schedule - as a truck driver, he was gone from our home for extended periods of time and I became lonely.  I really needed a husband and a father for my children.

9.  Ranjit is a really, really good guy. If he were not, I would not have married him.

10. I married Ranjit in good faith, for love, and not for money, or to help him with "immigration."

11.  I am able to state these facts now because I am strong in my marriage and trust my husband, and my husband understands the prior relationship I had with Ranjit.

(Doc. No. 1-2.)

On November 18, 2019, the BIA conducted a *de novo* review and dismissed the appeal.  In

relevant part, the BIA found as follows:

We will affirm the Director's determination of fraud in the beneficiary's prior marriage.  Section 204(c) of the Act provides for a mandatory bar to the approval of any subsequent visa petition filed on behalf of an alien who previously was found to have entered into a marriage in order to evade immigration laws.  *Matter of Cabeliza*, 11

I&N Dec. 812 (BIA 1966).  Our decision in *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990), states that the evidence of a fraudulent marriage "must be documented in the alien's file and must be substantial and probative."  *Id.* at 167.  Further, the "[D]irector should not give conclusive effect to determinations made in a prior proceeding." *Id.* at 168.  Where the record contains evidence that the beneficiary married a United States citizen to evade immigration laws, the burden then shifts to the petitioner to establish that the beneficiary did not seek an immigration benefit based on a prior fraudulent marriage.  *Matter of Kahy*,19 I&N Dec. 803, 806-07 (BIA 1988).

In this matter, the record contains the memorialization by a USCIS officer of a telephone conversation with the beneficiary's prior spouse, in which she admitted to marrying the beneficiary as a "favor" in view of his lack of immigration status but denied receiving compensation to do so.  According to the notes of this telephone conversation, which occurred in August 2016, the former spouse stated that the beneficiary never lived with her and the marriage was never consummated.  Furthermore, the former spouse stated that she was in a relationship with another man during her entire marriage to the beneficiary.  On appeal, the petitioner submits a sworn affidavit from the beneficiary's prior spouse disavowing her August 2016 statements to users and stating that she did not marry the beneficiary for immigration reasons, but rather that she married him for bona fide reasons after knowing him for several years.  *See* Petitioner's Br. at Attachment A.  The petitioner does not indicate why this affidavit was not provided previously in response to the NOID.  Therefore, we will not consider it for the first time on appeal.  *See Matter of Fedorenko*, 19 I&N Dec. 57, 74 (BIA 1984).

In view of the entire record including the prior spouse's statement to officers, her new affidavit, and the lack of evidence in the record indicating that the beneficiary and his prior spouse shared a bona fide relationship, we find that the evidence of a fraudulent marriage in this record is "substantial and probative" and that, therefore, the denial of the instant visa petition is supported on this record.  *Matter of Tawfik*, 20 I&N Dec. at 167.

(Doc. No. 1-6.)

On April 14, 2020, Plaintiffs filed the instant action, challenging the denial of Ms. Singh's Form I-130 Petition.  (Doc. No. 1.)  The Complaint does not set forth specific Counts but, rather, sets forth a series of single-sentence paragraphs which it describes as "Claims."  (*Id.* at pp. 7-8.)  In these "Claims," Plaintiffs allege that the USCIS decision denying Ms. Singh's Form I-130 Petition:

- "violated the governing statute and regulations, is arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law;"

9

- "was improper, as USCIS based its conclusions on conjecture and speculation, instead of fact;"

- "is based on flawed reasoning;" and

- "is unsupported by the evidence in the record."

(*Id*. at p. 7.)  In addition, Plaintiffs allege that the "decision denying Plaintiffs' 2015 I-130 Petition":

- "failed to reach an independent conclusion based on the evidence and violates *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990);"

- "was incorrect because Mr. Singh's file does not contain substantial and probative evidence that he attempted or conspired to enter into a marriage for the purpose of evading immigration laws;" and

- "failed to permit Plaintiffs' [sic] the opportunity to examine and rebut adverse evidence in violation of 8 C.F.R. § 103.2(b)(16)."

(*Id*.)  Finally, Plaintiffs allege that their due process rights were violated because they were not given the opportunity to examine and rebut adverse evidence.  (*Id*. at p. 8.)

On July 15, 2020, Defendants filed a Motion to Dismiss the Complaint in its entirety for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 5.)  Plaintiffs filed a Brief in Opposition on August 10, 2020, to which Defendants replied on August 24, 2020.  (Doc. Nos. 6, 7.)  On September 2, 2020, Plaintiffs filed a sur-reply to Defendants' Reply Brief.  (Doc. No. 8.)

On that same date, Defendants filed a Motion to Strike Plaintiffs' sur-reply, on the grounds that Plaintiffs failed to either seek leave or demonstrate that a sur-reply is warranted.  (Doc. No. 9.)  Plaintiffs did not file a response.  Upon review, the Court declines to strike Plaintiffs' sur-reply.  Although Defendants are correct that Plaintiffs failed to properly seek leave before filing their sur-reply, courts have found that motions to strike are disfavored and should be sparingly granted because they are a "drastic remedy."  *Braun v. Ultimate Jetcharters, Inc*., 2014 WL 12584328 at * 1 (N.D.

Ohio Feb. 25, 2014) (quoting *Resolution Trust Corp. v. Vanderweele*, 833 F. Supp. 1383, 1387 (N.D. Ind. 1993)).  *See also Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).  Here, the Court prefers to resolve the issues on the merits rather than through a motion to strike.  Accordingly, Defendants' Motion to Strike (Doc. No. 9) is denied.  Plaintiffs, however, are reminded of their obligation to seek leave before filing any sur-replies in the instant action, and expressly cautioned that the failure to seek leave may result in the striking of any future non-compliant filings.

The Court will now proceed to consider Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## II.     Standards of Review

### A.     Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff.  *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964).

### B.    The Administrative Procedure Act ("APA")

District courts have jurisdiction to review a decision on the merits of a Form I–130 petition to classify an alien as a relative of a United States citizen. *Adi v. U.S.,* 498 Fed. Appx. 478, 480 (6th Cir. 2012) (citations omitted). *See also Daraghma v. U.S. Citizenship and Immigration Services*, 228 F.Supp.3d 818, 822 (N.D. Ohio 2017). Pursuant to the APA, courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency decision is arbitrary and capricious if the agency fails to examine the relevant evidence or articulate a satisfactory explanation for the decision. *See Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006).

This standard of review is narrow and deferential, and courts "should accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole."

*Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). "Even when an agency explains its decision with less than ideal clarity," the decision will not be overturned "on that account if the agency's path may reasonably be discerned." *Bangura*, 434 F.3d at 502 (quoting *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004)). Courts should make a "searching and careful" inquiry into the facts, but an agency's factual findings should be accepted if they are supported by substantial evidence on the record. *See National Cotton Council of America v. US. EPA*, 553 F.3d 927, 934 (6th Cir. 2009); *Ky. Waterways Alliance v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008). *See also Arkansas*, 503 U.S. at 113. As a general matter, only the administrative record, which includes all the materials before the agency at the time it made its decision, will be considered. *See Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997); *Makhamreh v. Attorney General Dep't of Justice*, 2020 WL 6146593 at * 4 (S.D. Ohio Oct. 20, 2020).

A court must not substitute its judgment for that of the agency and it cannot reweigh the evidence if the agency's conclusion was reasonable. *See Daraghma*, 228 F.Supp.3d at 822. Instead, "the evidence 'must compel a different decision to be arbitrary and capricious.'" *Id*. (quoting *Adi v. United States*, 2011 WL 9613 at * 5 (N.D. Ohio Jan. 3, 2011) *aff'd* 498 Fed. Appx. 478 (6th Cir. 2012).

## III.    Legal Framework for I-130 Visa Petitions

When a United States citizen marries a non-citizen immigrant, there is a process the couple may go through to obtain permanent residence or other adjustment in immigrant status for the non-citizen spouse. *See* 8 C.F.R. §§ 204.1, 204.2. *See also Sholanke v. U.S. Citizenship & Immigration Services*, 2020 WL 1452449 at * 4 (N.D. Ohio March 25, 2020); *El Mokhamad v. Kelly*, 2018 WL 488953 at * 1 (E.D. Mich. Jan. 19, 2018). The first step in that process is a Form I-130 Petition

which, if approved, allows a citizen to obtain an immigrant visa for an immediate relative. 8 U.S.C. § 1154(b). When a Form I-130 Petition is filed based on marriage, the petitioner must show by a preponderance of the evidence that the marriage was *bona fide* at its inception; i.e. that the couple intended to establish a life together at the time they got married. *See Sholanke,* 2020 WL 1452449 at * 4; *Makhamreh*, 2020 WL 6146593 at * 4. *See also Matter of Soriano*, 19 1. & N. Dec. 764 (B.I.A. 1988) ("The central question is whether the bride and groom intended to establish a life together at the time they were married"); *Matter of Laureano*, 19 I. & N. Dec. 1 (B.I.A. 1983) (same).

In order to guard against individuals attempting to subvert immigration laws by fraudulently claiming marriage, USCIS investigates each couple seeking approval of a Form I-130 Petition. The investigation may include interviews of the couple, their friends, and/or family. *See* 8 C.F.R. § 103.2(b). USCIS may also review the couples' financial records and consider their daily activities such as whether they live together and whether they associate with one another's friends and family. Petitioners may submit evidence of a *bona fide* marriage to USCIS throughout this process, but they are not afforded a hearing prior to USCIS issuing its decision. It is the petitioner's burden to establish eligibility in visa petition proceedings. *See Matter of Brantigan*, 11 I&N Dec. 493, 495 (BIA 1966).

A visa petition may be denied pursuant to 8 U.S.C. § 1154(c) (also known as INA § 204(c)) where there is evidence in the record to indicate that an alien previously conspired to enter into a fraudulent marriage. *Matter of Laureano*, 19 I. & N. Dec. 1 (BIA 1983). Section 204(c) of the Immigration and Nationality Act ("INA") states:

> Notwithstanding the provisions of subsection (b) no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the

14

alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c); INA § 204(c).  In order for a visa petition to be barred by INA § 204(c), there must be "substantial and probative evidence" of such an attempt or conspiracy and the derogatory evidence must be contained in the alien's file.  *See* 8 C.F.R §§ 103.2(b)(16)(i), 204.2(a)(1)(ii).  *See also Bangura*, 434 F.3d at 502-503; *Sholanke*, 2020 WL 1452449 at * 4; *Matter of Tawfik*, 20 I&N Dec. 166, 167 (BIA 1990).  Substantial and probative evidence of marriage fraud is evidence that "must establish that it is more than probably true that the marriage is fraudulent."  *Matter of Singh*, 27 I & N Dec. 598, 607 (BIA 2019).  Such evidence can be direct or circumstantial.  *Id*.  The substantial and probative evidence standard is less than "clear and convincing evidence," which requires proof that something is "highly probably true," but more than a "preponderance of the evidence," which only requires proof that something is "probably true."  *Id.* at n. 7.

An officer who intends to deny a Form I-130 Petition based on INA § 204(c) cannot depend solely on the determinations made by other officers in prior proceedings.  *See Sholanke*, 2020 WL 1452449 at * 4; *Tawfik*, 20 I&N Dec. at 166-68.  The officer must form his or her own independent conclusion as to whether the beneficiary previously committed marriage fraud based on all of the evidence in the record.  *Id*.  If USCIS identifies substantial and probative evidence in the record suggesting the beneficiary's marriage was fraudulent, USCIS issues a NOID advising the petitioner of the derogatory evidence and affords the petitioner an opportunity to respond. 8 C.F.R. §§ 103.2(b)(16), 204.2(a)(1)(ii).

Once it is determined that a beneficiary entered a prior marriage for the purpose of evading the immigration laws, all subsequent Form I-130 Petitions filed on behalf of that beneficiary must be denied.  *See* 8 U.S.C. § 1154(c); *Makhamreh*, 2020 WL 6146593 at * 5.

15

### IV.     Analysis

Defendants move to dismiss Plaintiffs' APA and due process claims for failure to state a claim upon relief may be granted.  (Doc. Nos. 5, 7.)  The Court will address these claims separately, as set forth below.

#### A.     APA Claims

As an initial matter, neither party clearly identifies the specific APA claims asserted in the Complaint and the parties' briefing is inconsistent regarding this issue.  Thus, the Court begins by clarifying the particular APA claims at issue in this dispute.

Plaintiffs' Complaint is not a model of clarity with respect to the specific claims asserted under the APA.  Several of the "claims" set forth in Paragraphs 32 through 38 of the Complaint specifically challenge the USCIS decision denying Ms. Singh's Form I-130 Petition.  *See* Doc. No. 1 at ¶¶ 32, 33, 34, 35.  Others generally challenge the "decision" denying Ms. Singh's Petition, which could be interpreted as referring to either the USCIS decision or the November 2019 BIA decision. *Id.* at ¶¶ 36, 37, 38.  None of the "claims" in Paragraphs 32 through 38 identify the specific findings that are being challenged; i.e., none of the claims state whether Plaintiffs are challenging (1) the finding of prior marriage fraud with respect to the marriage between Mr. Singh and Ms. Newrones; and/or (2) the determination that Plaintiffs failed to establish that their current marriage was *bona fide* at its inception.

Plaintiffs' briefing has been inconsistent with respect to the precise nature of their APA claims as well.  In their Brief in Opposition to Defendants' Motion to Dismiss, Plaintiffs argue, at some length, that the USCIS's determination regarding Plaintiffs' current marriage (i.e., USCIS's finding that Plaintiffs failed to establish that their current marriage is *bona fide*) is arbitrary and capricious.

(Doc. No. 6 at pp. 7-11.)  However, in their sur-reply, Plaintiffs acknowledge that only the BIA decision affirming a finding of *prior* marriage fraud is at issue in this appeal.[5]  (Doc. No. 8 at p. 1)  As noted *supra*, in that decision, the BIA reviewed the USCIS decision *de novo* and issued a separate written opinion affirming the USCIS's "determination of fraud in the beneficiary's **prior marriage**." (Doc. No. 1-6) (emphasis added).  The BIA did not consider or address the USCIS's additional determination that the marriage between Mr. and Ms. Singh is not *bona fide.*  (Doc. No. 1-6.)

The Court construes the Complaint as challenging the BIA's November 2019 decision.  This construction is consistent both with the Plaintiffs' representations in their sur-reply and with prevailing law in this Circuit.  *See Makhamreh*, 2020 WL 6146593 at fn 2 ("The Sixth Circuit 'reviews the BIA's decision as the final agency determination.'") (quoting *Kamar v. Sessions*, 875 F.3d 811, 817 (6th Cir. 2017)); *Haddad v. Napolitano*, 2014 WL 11309784 at * 4 (W.D. Mich. Dec. 31, 2014) ("When the BIA reviews an immigration decision *de novo* and issues a separate opinion instead of summarily affirming the decision, the district court reviews the BIA's decision as the final agency determination.") (citing *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir.2009)).[6]  Thus, and in light of the fact that the BIA limited its decision to the issue of prior marriage fraud with respect to

---

[5] Specifically, Plaintiffs state as follows: "Defendants are correct in the assertion that '[t]he **only issue in this case** is whether Plaintiffs can meet their burden under the [APA] to show that the **Board of Immigration Appeal's . . . decision** to affirm United States Citizenship and Immigration Services' ('USCIS') denial of [Ms. Singh's] I-130 visa petition, based on a finding of marriage fraud, was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (Doc. No. 8 at p. 1) (emphasis added).

[6] The Sixth Circuit has noted that, where the BIA adopts the immigration judge's reasoning, the court reviews the immigration judge's decision directly to determine whether the decision of the BIA should be upheld on appeal.  *See Fang Huang v. Mukasey,* 523 F.3d 640, 649 (6th Cir.2008).  Here, the BIA reviewed the petition *de novo* and issued a written decision setting forth its own analysis regarding Mr. Singh's prior marriage to Ms. Newrones.  Plaintiffs do not argue that the BIA adopted or summarily affirmed the USCIS's reasoning and, indeed, the Court's own review indicates that it did not.  Thus, this Court will review the BIA decision herein.

the marriage between Mr. Singh and Ms. Newrones, the Court finds that Plaintiffs' APA claims are limited to challenging the BIA's decision with respect to that issue.

Proceeding to the issue of Mr. Singh's alleged prior marriage fraud, Defendants argue that "Plaintiffs fail to state an APA claim because they have not and cannot plausibly allege that the Board's or USCIS's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." (Doc. No. 5-1 at p. 5.) Specifically, Defendants assert that Plaintiffs have not plausibly alleged an APA claim because the Complaint contains only a "boilerplate recitation that USCIS's denial decision is arbitrary and capricious, without specifying how it could be so." (*Id*. at p. 8.) Defendants maintain that Plaintiffs cannot plausibly allege a claim under the APA because the BIA decision makes clear that the BIA considered all of the evidence that Plaintiffs provided but nonetheless found that there was substantial and probative evidence of prior marriage fraud in the record. (*Id.*) Defendants argue that Plaintiffs' APA claim must therefore fail because "[t]he only way this Court could reach a contrary conclusion would be to re-weigh the evidence and side with Plaintiffs, and the Supreme Court has repeatedly held that is not a proper role for a district court reviewing an agency action." (*Id.*)

Plaintiffs argue that the November 2019 BIA decision is arbitrary and capricious, an abuse of discretion, and/or otherwise not accordance in law because (1) Plaintiffs were not given the opportunity to examine and rebut adverse evidence in violation of 8 C.F.R. § 103.2(b)(16); (2) the BIA violated the APA by "effectively *ex post facto* reopening" Ms. Newrones's Petition and basing its finding of prior marriage fraud on the basis of information obtained well after the termination of that Petition; and (3) the BIA's finding of prior marriage fraud is not based on substantial and probative evidence in the record. The Court will address each of these APA claims in turn, below.

18

   1.  **Failure to permit opportunity to examine and rebut adverse evidence**

  Plaintiffs first argue that the BIA decision is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law because USCIS failed to provide Plaintiffs with the derogatory information that formed the basis of its finding of prior marriage fraud. Specifically, Plaintiffs assert that, pursuant to 8 C.F.R. § 103.2(b)(16), USCIS was required to provide Plaintiffs with the following: (1) a sworn statement from Ms. Newrones that her marriage to Mr. Singh was not *bona fide*; and (2) a copy of the Immigration officers' notes from their August 2016 interview with Ms. Newrones. (Doc. No. 6 at p. 6.) Plaintiffs argue that, if these documents exist, "Defendants have a duty to provide them to [Plaintiffs] so that they may have a meaningful opportunity to rebut the derogatory information." (*Id*. at pp. 6-7.)

  Defendants maintain that this claim should be dismissed as a matter of law because (1) the NOID specified the derogatory information (including Ms. Newrones's statement that her prior marriage to Mr. Singh was a sham) and provided Plaintiffs the opportunity to respond, and (2) Plaintiffs did, in fact, respond to the NOID by filing a brief and submitting additional evidence, including Ms. Newrones's August 2018 affidavit. (Doc. No. 5 at pp. 8-9.)

  The Court notes, with some frustration, that neither party cites any law in support of their respective positions with respect to this issue. The Court's own research reveals the following. The regulations governing a petitioner's right to inspect evidence related to the adjudication of an I-130 petition are set forth at 8 C.F.R. § 103.2(b)(16) and provide as follows:

> (16) *Inspection of evidence*. An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs.

> (i) Derogatory information unknown to petitioner or applicant. If the decision will be adverse to the applicant or petitioner and is based on derogatory information

19

considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section. Any explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding.

(ii) Determination of statutory eligibility. A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner ....

8 C.F.R. § 103.2(b)(16).  Numerous courts (including the Third, Fifth, Seventh, and Eleventh Circuits) have held that the above provisions do not require USCIS to provide a petitioner with the original evidence underlying the derogatory information on which it intends to rely when denying a Form I-130 Petition.  *See, e.g., Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009); *Zizi v. Field Office Director*, 753 Fed. Appx. 116 (3rd Cir. 2019); *Mangwiro v. Johnson*, 554 Fed. Appx. 255, 261 (5th Cir. 2014); *Diaz v. USCIS*, 499 Fed. Appx. 853, 855-856 (11th Cir. 2012); *Brinklys v. DHS*, 702 Fed. Appx. 856, 861 (11th Cir. 2017).  *See also Opoku-Agyeman v. Perez*, 886 F.Supp.2d 1143, 1149-1150 (W.D. Mo. 2012); *Gadzhieva v. Lynch*, 2017 WL 11457230 at * 6-7 (S.D. Ohio July 20, 2017); *Mullaj v. Napolitano*, 2013 WL 2397390 at * 5 (E.D. Mich. May 31, 2013).

Rather, these courts have held that, while the plain language of § 103.2(b)(16)(i) and (ii) requires that USCIS disclose to and advise the petitioners of the "derogatory information" that forms the basis for a denial, those provisions do not require USCIS to provide "documentary evidence of the information, but only sufficient information to allow the petitioners to rebut the allegations." M*angwiro*, 554 Fed. Appx. at 261.  *See also Diaz,* 499 Fed. Appx. at 856 (USCIS complied with § 103.2(b)(16)(i) by issuing a NOID "that indicated that [the] petition would be denied based on the discrepancies at the interview, and specifically gave [the petitioner] the opportunity to provide rebuttal evidence and to explain the discrepancies"); *Brinklys*, 702 Fed. Appx. at 861; (finding that

USCIS complied with § 103.2(b)(16)(i) and (ii) by issuing notices that listed and summarized the derogatory information and provided plaintiffs with the opportunity to respond); *Owusu-Boakye v. Barr*, 376 F.Supp.3d 663, 679 (E.D. Va. 2019) (same), *aff'd*, 2020 WL 6707333 at fn 2 (4th Cir. Nov. 16, 2020).  Thus, courts have held that, "under the regulations, in an adjudication of an I-130 petition USCIS must disclose and advise the petitioner of adverse 'information' and 'information' upon which it relies, but the petitioner is not entitled to production of or access to the evidence or witnesses that constitute the basis of such 'information.'" *Owusu-Boakye*, 376 F.Supp.3d at 679.

In light of the above, the Court rejects Plaintiffs' argument that USCIS improperly failed to provide Plaintiffs with either a sworn statement from Ms. Newrones and/or a copy of the Immigration officer's interview notes.  (Doc. No. 6 at p. 6.)  In the Complaint, Plaintiffs acknowledge that USCIS issued a NOID on August 10, 2017, in which it stated that it intended to deny the Petition because "Mr. Singh's previous marriage to Ms. Newsome [sic] was for the purpose of evading immigration laws, and thus the 2015 I-130 Petition was prohibited under INA § 204(c)."  (Doc. No. 1 at ¶ 22.) The Court does not have the NOID before it; however, Plaintiffs do attach the July 2018 USCIS decision denying the instant Petition to the Complaint.  (Doc. No. 1-3.)  Therein, the USCIS states that the "NOID cited the discrepancies and evidentiary shortcomings set forth above."  (*Id*. at PageID# 18.)  As noted *supra*, the USCIS decision summarizes Ms. Newrones's August 2016 interview with Immigration officers, including her admission that her marriage to Mr. Singh was not *bona fide*.  (*Id*. at PageID#s 15-16.)  Thus, the USCIS decision indicates (and Plaintiffs do not contest) that the NOID informed Plaintiffs that USCIS intended to deny Ms. Singh's Petition because Ms. Newrones told USCIS that her marriage to Mr. Singh was "not a real marriage."  (*Id.* at PageID# 15-16, 18.)  In addition, Plaintiffs acknowledge that they had the opportunity to respond (and did, in fact,

respond) to the NOID before USCIS ultimately denied the Petition in July 2018.[7]  (Doc. No. 1 at ¶ 23.)

Based on the above, the Court finds Plaintiffs have failed to state an APA claim based on USCIS's failure to provide them with either a sworn statement from Ms. Newrones or the interview notes of the Immigration officer(s) who spoke to her in August 2016.  Consistent with the Circuit and District court decisions noted above, the Court finds that USCIS's summary of Ms. Newrones's August 2016 interview was sufficient to inform Plaintiffs of, and allow them an opportunity to rebut, the allegations of marriage fraud.[8]  The summary provided adequate notice to Plaintiffs of the key evidence of marriage fraud that they were required to rebut.  *See, e.g., Ghaly v. INS*, 48 F.3d 1426, 1434-1435 (7th Cir. 1995) (finding that a one-sentence summary of the contents of an affidavit was sufficient because it provided "the crucial evidence" marking the marriage as fraudulent).  Plaintiffs had an opportunity to rebut the information by submitting additional information in response to the NOID.

Accordingly, Defendants are entitled to judgment in their favor with respect to this claim.

---

[7] In their brief in opposition and sur-reply, Plaintiffs appear to suggest that the USCIS's August 2016 interview of Ms. Newrones did not, in fact, take place.  *See* Doc. No. 6 at p. 6 (referring to the "lack of evidence that th[e] purported interview [of Ms. Newrones] with USCIS officers took place").  This suggestion, however, is directly contrary both to (1) the allegation in Plaintiff's Complaint that USCIS contacted and spoke with Ms. Newrones in August 2016 (Doc. No. 1 at ¶ 21); and (2) Ms. Newrones's own affidavit dated August 30, 2018, in which she avers that "USCIS agents spoke to me to investigate my marriage to Ranjit" (Doc. No. 1-2 at ¶ 4.)

[8] The Court acknowledges that the Ninth Circuit Court of Appeals has reached a different conclusion with respect to this issue.  *See Mattson v. Wolf*, 826 Fed. Appx. 603 (9th Cir. 2020) (in reviewing denial of I-130 visa petition, finding that USCIS's failure to provide plaintiff with a complete copy of his former wife's written statement violated both the APA and principles of procedural due process); *Zerezghi v. USCIS*, 955 F.3d 802 (9th Cir. 2020) (finding that USCIS's failure to provide underlying documentation violated plaintiffs' procedural due process rights).  The Sixth Circuit does not appear to have directly addressed this particular issue in the context of the denial of a Form I-130 visa Petition.  As noted above, the majority of Circuit courts to have considered the issue have found that neither § 103.2(b)(16) nor due process principles require USCIS to disclose the underlying evidence or witnesses for examination.  The Court agrees with the reasoning of these courts.

### 2.     "*Ex Post Facto*" Evidence of Prior Marriage Fraud

Plaintiffs next argue that the BIA's decision is arbitrary and capricious, an abuse of discretion and not otherwise in accordance with law, because it is based on evidence of prior marriage fraud that was developed years after the prior fraud allegedly occurred and is not contained in the "file" of Petition pertaining to that previous marriage.  (Doc. No. 6 at pp. 1-2.)  Specifically, Plaintiffs assert that, because Mr. Singh's marriage to Ms. Newrones was terminated prior to final adjudication of Ms. Newrones's I-130 Petition, there was no finding of fraud by USCIS prior to the termination of either that marriage or that Petition.  (*Id.* at p. 4-5.) Plaintiffs assert that, therefore, "there is no evidence regarding Mr. Singh's alleged marriage fraud contained in the file for the prior 2001 Newrones I-130 Petition, as required by regulation."  (*Id.* at p. 5.)  Rather, Plaintiffs argue that Defendants have improperly "effectively *ex post facto* reopened Mr. Singh's previous I-130 Petition . . . claimed it was fraudulent based on facts and evidence not contained in the record, and used this finding to deny Plaintiffs' present Petition," in violation of the APA.  (*Id.*)

Defendants argue that the BIA decision is not arbitrary or capricious, an abuse of discretion, or otherwise contrary to law because USCIS is statutorily authorized to review a beneficiary's background and any prior marriages in connection with its investigation of a Form I-130 visa petition. (Doc. No. 7 at pp. 4-5.)

For the following reasons, the Court agrees with Defendants.  The relevant regulation provides as follows:

> (ii) *Fraudulent marriage prohibition*. Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy. Although

> it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, **the evidence of the attempt or conspiracy must be contained in the alien's file.**

8 C.F.R. § 204.2(a)(1)(ii) (emphasis added).  The Court rejects Plaintiffs' argument that the phrase "contained in the alien's file" in the above regulation necessarily means that evidence of prior marriage fraud must be contained in the file created by USCIS in connection with a *previous* I-130 Petition regarding the same alien.  There is nothing in the plain language of either the above regulation or INA § 204(c) that suggests such a narrow reading, and Plaintiffs cite no authority whatsoever in support of their position.

To the contrary, as Defendants correctly note, at least one district court has considered this precise issue and rejected Plaintiff's argument.  In *Bangura v. Whitaker*, 2019 WL 418858 (E.D. Va. Feb. 1, 2019), plaintiff Momoh Bangura, a native and citizen of Sierra Leone, married Lashonna Baylor, a U.S. citizen. While they were married, Baylor submitted an I-130 petition on behalf of Momoh with USCIS.  The couple later divorced and the petition was withdrawn.  Notably, USCIS had not made a determination on the petition at the time it was withdrawn.  Several years later, Momoh married plaintiff Fatmata Bangura.  Fatmata filed an I-130 petition on behalf of Momoh, which the USCIS denied on the grounds that Momoh had previously entered into a fraudulent marriage with Baylor and thus was ineligible for this classification pursuant to 8 U.S.C. § 1154(c). Plaintiffs appealed to the BIA, which affirmed USCIS's decision.

On appeal to the district court, Plaintiffs argued that it was error for the agency to have rested its decision on a finding of prior marriage fraud made well after the withdrawal of Baylor's Form I-130 Petition.  The district court considered and rejected this argument as follows:

> In its decision, the BIA noted that it is the agency's duty to investigate past relationships in determining whether to grant or deny an I-130 petition, rejecting

Plaintiffs argument that the agency had abused it discretion in investigating a marriage from 10 years ago. This Court agrees. The relevant statute, 8 U.S.C. § 1154 (b) and (c), states that an I-130 petition shall not be issued if the agency finds the alien entered into a previous fraudulent marriage. The Plaintiffs seems to suggest that the agency must have made this determination at the time the supposed fraudulent marriage occurred, 10 years ago in this case. However, USCIS "may rely on any relevant evidence, including evidence having its origin in prior USCIS proceedings involving the" alien in assessing I-130 petitions. *Matter of Tawfik*, 20 I&N Dec. 166, 167 (BIA 1990). In this case, evidence of Momoh's marriage to Baylor and the couple's I-130 petition was in the record, and USCIS acted within its discretion in investigating the marriage to determine whether it was fraudulent.  For these reasons, the agency did not abuse its discretion in investigating and determining Momoh previously entered into a fraudulent marriage with Baylor.

*Id*. at * 2. [9]

The Court agrees with the above reasoning and rejects Plaintiffs' argument that it was error for the BIA to rely on evidence of prior marriage fraud that was not developed at the time of Ms. Newrones' 2001 Form I-130 Petition.  To the contrary, the Court finds that USCIS properly investigated Mr. Singh's previous marriage to Ms. Newrones in connection with Ms. Singh's Form I-130 Petition.  Evidence that Mr. Singh's marriage to Ms. Newrones was fraudulent was made part of the "file" relating to Ms. Singh's Petition and, as discussed above, Plaintiffs were provided the opportunity to respond (and did respond) to that evidence.

Accordingly, the Court finds that Plaintiffs' argument is without merit and Defendants are entitled to judgment in their favor with respect to this claim.

### 3.    Substantial and probative evidence of prior marriage fraud

In the Complaint, Plaintiffs allege that the denial of Ms. Singh's Form I-130 Petition was arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law because it

---

[9] The Fourth Circuit Court of Appeals subsequently affirmed the district court's opinion, finding in a brief, unpublished decision that "[w]hile the Banguras raise various challenges to the agency's decision to investigate a prior marriage, the Banguras do not cite any error of law."  *Bangura v. Whitaker*, 784 Fed. Appx. 179 (Mem.) (4th Cir. Nov. 15, 2019).

is not supported by substantial and probative evidence of prior marriage fraud. In particular, Plaintiffs allege that (1) the dismissal of Ms. Newrones's 2018 Affidavit is based on "flawed reasoning," (2) the denial of Ms. Singh's Petition is "unsupported by the record;" (3) the BIA failed to reach an independent conclusion based on the evidence; and (4) "Mr. Singh's file does not contain substantial and probative evidence that he attempted or conspired to enter into a marriage for the purpose of evading immigration laws." (Doc. No. 1 at ¶¶ 32, 34, 35, 36, 37.)

Defendants argue that Plaintiffs cannot plausibly state a claim upon which relief may be granted with respect to this claim because the BIA considered all of the evidence concerning Mr. Singh's prior marriage to Ms. Newrones, including Ms. Newrones' statements to USCIS in August 2016 and her subsequent affidavit recanting those statements. (Doc. No. 5-1 at pp. 5-9.) Defendants assert that "the Board further evidenced its examination of the complete record when it listed the evidence it reviewed, including USCIS's decision denying Plaintiffs I-130 visa petition, the NOID, Plaintiffs' response to the NOID, and Plaintiffs' brief on appeal, which contains the exhibits Plaintiffs mention in their complaint." (*Id*. at p. 7.) Defendants argue that "in light of the entire record," the BIA properly concluded that the evidence of prior marriage fraud is "substantial and probative." (*Id*.) Defendants maintain Plaintiffs' claim that the BIA decision is arbitrary and capricious and not supported by the record is nothing more than a request that the Court reweigh the evidence and consider the credibility of witnesses, which is improper under the APA. (*Id.*)

Plaintiffs argue that the only evidence of prior marriage fraud in this case "appears to be the sole conversation by Ms. Newrones by an unknown USCIS employee." (Doc. No. 8 at p. 4.) Plaintiffs further assert that the BIA improperly found that the alleged "lack of evidence" that Mr. Singh and Ms. Newrones shared a *bona fide* relationship constituted a finding of "substantial and

probative evidence" of prior marriage fraud. (Doc. No. 6 at p. 7.) Plaintiffs argue that they "are not asking this Court to reweigh the evidence, but rather to determine if Defendants even placed it on the scale in the first place." (Doc. No. 8 at p. 4.)

For the following reasons, the Court finds that Defendants' request that this claim be dismissed is premature and, therefore, denied. While the parties' briefing appears to suggest that the only evidence in the administrative record regarding the issue of Mr. Singh's alleged prior marriage fraud is USCIS's summary of its August 2016 interview with Ms. Newrones and Ms. Newrones' August 2018 affidavit, the Court notes that the Administrative Record has not yet been filed in this case. Thus, the Court has no independent knowledge or understanding of the contents of that record. Moreover, as Defendants themselves acknowledge, the BIA states that it considered "the entire record" in rendering its decision and based its decision, in part, on the "lack of evidence" in that record indicating that the Mr. Singh and Ms. Newrones shared a *bona fide* relationship. As this Court does not have the "entire record" before it, it is not in a position to evaluate whether the BIA's decision is unsupported by the record or "based on flawed reasoning." This particular claim, therefore, will have to be resolved after the Administrative Record is filed with the Court and the parties have submitted briefing with respect thereto.

Accordingly, Defendants' Motion to Dismiss is denied with respect to Plaintiffs' claim that the BIA's finding of prior marriage fraud is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance in law because it is unsupported by the record and/or based on flawed reasoning.

**B.      Due Process Claim**

27

In the Complaint, Plaintiffs allege that their "due process rights were violated because they were not given the opportunity to examine and rebut adverse evidence."  (Doc. No. 1 at ¶ 39.) Defendants argue that, to the extent Plaintiffs claim a violation of due process rights, "they have failed to allege a protected interest or engage in any of the required due process analysis."  (Doc. No. 7 at fn 9.)  Plaintiffs failed to respond to this argument.[10]  (Doc. No.  8.)

Under the Fifth Amendment no person shall "be deprived of life, liberty, or property, without due process of law."  This clause has been interpreted to protect an individual's right to both procedural and substantive due process.  With regard to substantive due process, the Sixth Circuit has held that "[g]enerally, a plaintiff adequately alleges a substantive due process claim where the plaintiff pleads that a statute or government action burdens a fundamental right and cannot withstand strict scrutiny."  *Bangura,* 434 F.3d at 494.  "In immigration cases, however, federal courts apply a much more deferential standard of review to substantive due process challenges even where the immigration law interferes with a plaintiff's fundamental rights."  *Id.* at 494-495 (citing *Fiallo v. Bell,* 430 U.S. 787, 798–99 (1977)).  The government's action need only be "conceivably related to the achievement of a federal interest."  *Almario v. Attorney General*, 872 F.2d 147, 152 (6th Cir. 1989). The Sixth Circuit has opined that "this standard may be even lower than rational basis review." *Bangura*, 434 F.3d at 494-495.

Procedural due process requires the government to provide an individual fair process before depriving him of a protected liberty or property interest.  Due process rights only attach, however,

---

[10] Defendants requested dismissal of Plaintiffs' due process claim for the first time in their Reply Brief.  Ordinarily, the Court would deem the argument waived on the grounds that Defendants had failed to properly raise it in their opening brief.  Here, however, Plaintiffs filed a sur-reply and were afforded an opportunity to respond to Defendants' argument. Thus, the Court will consider Defendants' argument that Plaintiffs' due process claim fails to state a claim upon which relief can be granted under Rule 12(b)(6).

once a plaintiff asserts a liberty or property interest.  *Bangura*, 434 F.3d at 495.  *See also Almario*, 872 F.2d at 151. To establish a liberty or property interest, the plaintiff must demonstrate that the Constitution or a federal or state statute grants him a protected right.  *Id.  See Almario*, 872 F.2d at 151.

Here, the Court finds Plaintiffs have failed to state either a substantive or procedural due process claim.  Plaintiffs allege that Defendants violated their due process rights by failing to provide "an opportunity for Plaintiffs to examine and rebut adverse evidence."  (Doc. No. 1 at ¶ 39.)  The Complaint does not contain any further detail regarding the basis for this claim and, therefore, fails to identify with sufficient particularity either a fundamental right or a protected liberty and/or property interest.  Moreover, standing alone, the bald assertion that Plaintiffs were deprived of an opportunity to examine and rebut adverse evidence is directly contradicted by other allegations in the Complaint, including allegations that (1) USCIS issued a NOID that identified the basis for its intended denial of Ms. Singh's Petition; (2) Plaintiffs responded to the NOID by submitting additional evidence in support of their Petition in September 2017 and May 2018; and (3) Plaintiffs submitted further evidence in support of their appeal to the BIA in September 2018.  (Doc. No. 1 at ¶¶ 22, 23, 25; Doc. No. 1-3 at PageID# 18.)  Thus, the Court finds that the allegations in the Complaint fail to plausibly allege a violation of either Plaintiffs' substantive or procedural due process rights.

The Court notes that, in their Brief in Opposition to Defendants' Motion, Plaintiffs argue, summarily, that Defendants' failure to produce either a sworn statement from Ms. Newrones or a copy of the Immigration officer's notes of his interview with Ms. Newrones, violates their due process rights.  (Doc. No. 6 at p. 7.)  This argument is without merit.  As discussed at length *supra*, this Court has already determined, as a matter of law, that USCIS's summary of Ms. Newrones's August 2016

29

interview was sufficient to inform Plaintiffs of, and allow them an opportunity to rebut, the allegations of prior marriage fraud.  Accordingly, and in the absence of any meaningful argument from Plaintiffs to the contrary, the Court finds that Plaintiffs have failed to state a claim for either a substantive or due process claim on this basis.  *See, e.g., Opoku-Agyeman*, 886 F.Supp.2d at 1149-1150 ("A due process argument will fail if a petitioner cannot show USCIS violated § 103.2"); *Mullaj*, 2013 WL 2397390 at * 5 (finding that petitioner failed to state a claim for a due process violation where USCIS "produced a summary of the pertinent discrepancies, rather than producing all the 'evidence' on which Respondents intend to rely.").  *See also Diaz*, 499 Fed. Appx. at 855-856; *Mangwiro*, 554 Fed. Appx. at 261-262.

Accordingly, Defendants' Motion to Dismiss Plaintiffs' due process claim is granted.[11]

## V.     Conclusion

For all the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 5) is GRANTED IN PART and DENIED IN PART, as set forth herein.  Defendants' Motion to Strike (Doc. No. 9) is DENIED.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
Date: January 22, 2021                    U. S. DISTRICT JUDGE

---

[11] Defendants also argue that "to the extent Plaintiffs have stated in their complaint that jurisdiction arises under the Mandamus Act, they have failed to allege any facts that would support that cause of action." (Doc. No. 7 at fn. 9.) Plaintiffs failed to respond to this argument.  (Doc. No. 8.)  While the Complaint summarily references 28 U.S.C. § 1361 as a basis for jurisdiction, the Court finds that the Complaint does not sufficiently assert a claim for mandamus relief. Moreover, even assuming *arguendo* that it did, such a claim would be subject to dismissal since USCIS and the BIA have already issued decisions on Ms. Singh's I-130 Petition.  *See, e.g., Sholanke*, 2020 WL 1452449 at fn 1 ("The Mandamus Act also does not apply in this case as USCIS has already adjudicated the visa petition.")

30