IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Ranjit Singh, et al.,** | Case No. 1:20cv799 |
| **Plaintiffs,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **United States of America, et al.,** | MEMORANDUM OPINION AND ORDER |
| **Defendants** | |

This matter concerns the denial of a Form I-130 Petition for Alien Relative ("Form I-130 Petition") filed by Plaintiff Kristine Singh (hereinafter "Ms. Singh") on behalf of her husband Plaintiff Ranjit Singh (hereinafter "Mr. Singh"). Ms. Singh's Form I-130 Petition was denied by the United States Citizenship and Immigration Services ("USCIS") and the denial was affirmed by the Board of Immigration Appeals ("BIA"). Plaintiffs seek review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.

Currently pending is Plaintiffs' "Objection to Defendants' Certified Administrative Record." (Doc. No. 15.) Defendants United States of America; Merrick Garland, Attorney General of the United States; Alejandro Mayorkas, Secretary of the Department of Homeland Security ("DHS"); Kenneth Cuccinelli, Senior Official Performing Duties of the Director of USCIS; Anna Chau, District Director of USCIS District N12; and Karyn Zarlenga, Cleveland Field Office Director of USCIS[1] filed a Brief in Opposition on May 14, 2021. (Doc. No. 17.) Plaintiffs did not file a Reply.

---

[1] In the Complaint, Plaintiffs name William Barr as the Attorney General, Chad Wolf as the Acting Secretary of the Department of Homeland Security, Mark Koumans as the Director of USCIS, and Mark Hansen as the District Director of USCIS. (Doc. No. 1.) Pursuant to Fed. R. Civ. R. 25(d), Merrick Garland, Alejandro Mayorkas, Kenneth Cuccinelli and Anna Chau are substituted in place of these Defendants, respectively.  *See* Doc. No. 5 at p. 1.

For the following reasons, Plaintiffs' Objection is overruled.

I.    **Background**

    A.     **Factual Background and Administrative Proceedings**

In September 1990, Mr. Singh entered the United States without inspection at or near Brownsville, Texas. (Doc. No. 14-2 at PageID# 183.) Eleven years later, in 2001, Mr. Singh married Heidi Newrones (hereinafter "Ms. Newrones"), a United States citizen. (*Id*.) Ms. Newrones subsequently filed a Form I-130 Petition on Mr. Singh's behalf, and Mr. Singh concurrently filed a Form I-485 Application to Register Permanent Residence or Adjust Status.[2] (*Id*.)

Mr. Singh's and Ms. Newrones's marriage came to an end in 2003. Specifically, a Petition for Dissolution of Marriage was filed on June 11, 2003 and an Entry and Decree of Dissolution of Marriage was thereafter issued on August 28, 2003. (*Id*.) Two years later, in August 2005, Ms. Newrones's Form I-130 Petition was denied "as the marriage between Mr. Singh and Ms. Newrones was terminated." (*Id*.) In addition, Mr. Singh's Form I-485 Petition was administratively closed "as USCIS did not have jurisdiction to adjudicate the application, as Mr. Singh was still under the jurisdiction of the Immigration Judge." (*Id*.)

Several years later, on May 6, 2013, Mr. Singh married Plaintiff Kristine Singh (then-known as Kristine Vincent) in Cleveland, Ohio. (*Id*.) Ms. Singh subsequently filed the instant Form I-130 Petition on Mr. Singh's behalf. (*Id*.) Ms. Singh submitted various evidence in support of the Petition,

---

[2] The Immigration and Nationality Act ("INA") provides that U.S. citizens may file a Form I-130 petition for classification of their alien spouse as "immediate relative status." 8 U.S.C. § 1154. When a United States citizen files a Form I-130 Petition, the government is required to review and adjudicate the petition. 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154. If the Form I-130 Petition is approved, the non-citizen spouse may apply for lawful permanent resident status. *See* 8 U.S.C. § 1255(a). *See Makhamreh v. Attorney General Dep't of Justice,* 2020 WL 6146593 at * 4 (S.D. Ohio Oct. 20, 2020); *Sholanke v. U.S. Citizenship & Immigration Services*, 2020 WL 1452449 at *4 (N.D. Ohio March 25, 2020).

2

including (1) joint checking account statements; (2) bank cards; (3) a copy of a lease agreement for Plaintiffs' purported marital residence; (4) various bills in Mr. Singh's name; (5) a Verizon wireless call log; (6) copies of Plaintiffs' marriage license and marriage record; (7) a copy of the Separation Agreement and Entry and Decree of Dissolution of Marriage between Mr. Singh and Ms. Newrones; (8) six notarized statements attesting to the validity of Plaintiffs' marriage; and (9) copies of various photographs. (*Id.*).

In March 2016, Mr. and Ms. Singh appeared for an interview with an Immigration Services officer in connection with the Form I-130 Petition. (*Id.* at PageID# 184.) Based on statements made by Plaintiffs during the interview, and USCIS's review of the evidence submitted, USCIS determined that "the testimony and documentary evidence in the record did not establish the claimed relationship" between Mr. and Ms. Singh. (*Id.*) USCIS therefore referred Ms. Singh's Form I-130 Petition for "further investigation regarding the bona fides of [Plaintiffs'] current marriage and [Mr. Singh's] prior marriage to Heidi Newrones." (*Id.*)

Immigration officials subsequently contacted Ms. Newrones by telephone in August 2016 regarding her previous marriage to Mr. Singh. (Doc. No. 14-6 at PageID# 570.) USCIS summarized its telephone conversation with Ms. Newrones as follows:

> IO Zinnerman spoke with Heidi FREDRICKSON (aka: NEWRONES). [Newrones] stated in the telephonic interview she met the beneficiary through a friend who worked with the beneficiary's cousin and had known him for 7 years prior to marriage. [Newrones] admitted the beneficiary asked her several times to marry him as a favor before she complied. [Newrones] stated she was nervous and was never comfortable with the issue, however complied with his request to marry him as a favor because she felt bad and was concerned for his safety if he returned to India. [Newrones] stated they signed a lease together at 147 Deerfield Lane, Aurora, OH; however the beneficiary never moved in with her. [Newrones] stated the beneficiary was supposed to move in with her at the Deerfield location but he never moved in. [Newrones] stated she recalls the beneficiary living in Maple Heights at the time she lived on Deerfield Lane. [Newrones] stated the beneficiary paid half of the rent because he

3

>was scheduled to move in but when he did not move in, she stopped taking half of the rent money and her sister later moved in with her at the Deerfield location. [Newrones] stated she never consummated the marriage with the beneficiary, and never had a bona fide boyfriend/girlfriend relationship with the beneficiary. [Newrones] stated very few people knew about the marriage with the beneficiary, with her children and father finding out on 8/10/2016. [Newrones] stated she was in a relationship with David FREDRICKSON since the end of 2000 and was dating DAVID the entire time of the marriage with the beneficiary. [Newrones] stated the beneficiary did not promise her anything and she did not receive any money from him for agreeing to the fraudulent marriage. [Newrones] stated when she filed for divorce so that she could freely marry DAVID, in which the beneficiary got upset and wanted her to stay married in order to continue with the immigration process. [Newrones] admitted it was not a real marriage.

(*Id*.) Plaintiffs allege that Ms. Newrones was coerced into making the above statements, alleging that "immigration officials confronted Ms. Newrones, accused her of fraud, and threatened her with fines and jail time if she did not admit her marriage to Mr. Singh was a sham." (Doc. No. 1 at ¶ 21.) In addition, Plaintiffs allege that, at the time of her interview with USCIS, Ms. Newrones was in severe pain and awaiting back surgery. (*Id*.)

The USCIS also conducted an unannounced visit to Plaintiffs' marital residence as part of its further investigation regarding Ms. Singh's Form I-130 Petition. (Doc. No. 14-6 at PageID# 571.) The Immigration officers noted that Mr. Singh was not at the residence at the time of the visit and, further, that a visual inspection of the residence revealed "minimum [sic] personal belongings" of Mr. Singh.[3] (*Id*. at PageID# 571-572.) The officers noted that there were no daily transactions or withdrawals in the Plaintiffs' joint checking account and that Ms. Singh admitted she had a personal account at a different bank which she used on a daily basis. (*Id.*) The USCIS officers then visited the home of Ms. Singh's mother, Linda Abood. (*Id*. at PageID# 572.) According to the officers, Ms.

---

[3] During the March 2016 interview, Plaintiffs stated that Mr. Singh worked in Akron and that he sometimes spent the night in Akron with a friend because he (Mr. Singh) did not have a driver's license and Ms. Singh did not drive on the highway. Ms. Singh reiterated this information during the officers' unannounced visit.

Abood made several statements that contradicted statements made by Ms. Singh. (*Id*.) Lastly, the USCIS officers visited one of Plaintiffs' neighbors. (*Id.* at PageID# 573.) This neighbor was able to identify Ms. Singh and her two children but did not recognize a photo of Mr. Singh. (*Id*.)

On August 10, 2017, USCIS issued a Notice of Intent to Deny ("NOID") Ms. Singh's Form I-130 Petition. (Doc. No. 14-2 at PageID#s 194-203.) Therein, the USCIS advised Ms. Singh that the evidence supporting the Form I-130 Petition was insufficient to establish eligibility for the benefit sought. (*Id*.) The NOID specifically cited the discrepancies discussed above and provided Plaintiffs the opportunity to respond. (*Id*. at PageID# 197- 200)

On September 18, 2017, Plaintiffs responded to the NOID and submitted additional pieces of evidence in support of the Petition, including (1) a brief from Plaintiffs' attorney; (2) copies of joint bank statements and personal money orders; (3) utility bills; and (4) affidavits from Ms. Singh, Mr. Singh, and Ms. Singh's son M. R. (Doc. No. 14-2 at PageID# 187.) In addition, on May 2, 2018, Plaintiffs submitted additional evidence in support of the Petition, after requesting and receiving information in response to a Freedom of Information Privacy Act ("FOIA") request. (*Id*.) The additional evidence submitted in support of the Petition included the following: (1) a brief from Plaintiffs' attorney; (2) copies of letters from USCIS's FOIA Operations division; (3) copies of six redacted affidavits obtained via Plaintiffs' FOIA request; and (4) copies of an Immigration Officer's notes, also obtained via the FOIA request. (*Id.*)

According to USCIS's summary, in his affidavit, Mr. Singh averred that he did not marry either Ms. Newrones or Ms. Singh for immigration purposes. (*Id*. at PageID# 188.) He explained that he did not have substantial personal items at his marital residence with Ms. Singh "as he sometimes remains in Akron because of work." (*Id*.) He further stated that there were, in fact, other

5

personal items of his in the marital residence that USCIS did not see during the unannounced visit. (*Id.*) Likewise, in her affidavit, Ms. Singh insisted that she and Mr. Singh are in a *bona fide* relationship. (*Id.* at PageID# 187.) She explained that, due to several health issues, she is unable to drive Mr. Singh back and forth from his job in Akron and, therefore, many nights he has to stay in Akron. (*Id.*) Ms. Singh indicated that she and Mr. Singh do, in fact, regularly use their joint bank account and, further, that many of Mr. Singh's personal belongings are located at their marital residence. (*Id.*) Finally, Ms. Singh indicated that her mother (Ms. Abood) may have been confused by the Immigration officers' questions, and that the neighbor may not have ever seen Mr. Singh because of his (Mr. Singh's) work schedule in Akron. (*Id.*)

On July 13, 2018, USCIS issued a lengthy decision in which it denied Ms. Singh's Form I-130 Petition. (Doc. No. 14-2 at PageID#s 181-190.) Specifically, after discussing all of the above in detail, the USCIS determined that (1) "the record contains substantial and probative evidence demonstrating that [Mr. Singh] married Heidi Newrones for the purpose of evading the immigration laws;" and (2) "you have failed to demonstrate by a preponderance of the evidence that you and your spouse have entered into a *bona fide* marital relationship and not for the purpose of obtaining immigration benefits for your spouse." (*Id.*)

On August 9, 2018, Plaintiffs timely appealed the USCIS decision to the Board of Immigration Appeals ("BIA"). (Doc. No. 1 at ¶ 24.) On September 10, 2018, Plaintiffs' counsel submitted a brief in support of the appeal, which included additional evidence in support of Ms. Singh's Petition. (*Id.* at ¶ 25.) This additional evidence included (1) affidavits from Ms. Newrones, Mr. Singh, and Ms. Singh; (2) a lease agreement; (3) letters from loved ones; and (4) utility bills, joint bank account statements, and an auto insurance policy. (*Id.*)

Ms. Newrones's affidavit is dated August 30, 2018 and provides (in relevant part) as follows:

1. I was formerly married to Ranjit Singh. We later divorced and I then married my current husband, and took his last name, "Fredrickson."

2. I married Ranjit in good faith, and because I loved him.

3. As I asserted to the USCIS-- nobody paid me or gave me anything of value to induce me to marry Ranjit.

\*\*\*

6. The USCIS officer accused me of entering into a sham marriage to help Ranjit get his "green card." The USCIS officer accused me of "defrauding the USA" or something like that, and threatened me with jail time, fines, or both. I was in severe pain and awaiting back surgery. I was weak and felt alone. I was vulnerable and felt threatened. The USCIS officer saw my weakness and coerced me into saying things that were not true.

7. Hence I want to set the record straight:

   a. I did live with Ranjit; we had a lease for our apartment at 147 Deerfield Lane in Aurora, OH. As my husband, Ranjit did pay half the rent.

   b. I did consummate my marriage with Ranjit; I lied earlier because I felt threatened and ashamed, thinking that USCIS would besmirch my reputation before my family and children.

   c. I shared a joint bank account with Ranjit at First National Bank of Ohio, (now PNC Bank), Aurora, Ohio into which we deposited money we earned and paid our bills. Ranjit did contribute to our household.

   d. My children loved Ranjit; he used to do things with them, such as take them to get ice cream as a treat. My children still love him.

   e. My sister . . . knew I was married to Ranjit.

   f. I did not marry Ranjit as a "favor," as the USCIS states. I knew Ranjit for several years before we got married. I got to know and love the kind of man that he was.

   g. Ranjit told me openly about his immigration status, because he did not want to "surprise" me or make me feel like he had married me just so I could help

7

> him. I married Ranjit because I loved him and because when you love someone, you want to help them.
>
> 8. Our marriage fell apart because of Ranjit's work schedule - as a truck driver, he was gone from our home for extended periods of time and I became lonely. I really needed a husband and a father for my children.
>
> 9. Ranjit is a really, really good guy. If he were not, I would not have married him.
>
> 10. I married Ranjit in good faith, for love, and not for money, or to help him with "immigration."
>
> 11. I am able to state these facts now because I am strong in my marriage and trust my husband, and my husband understands the prior relationship I had with Ranjit.

(Doc. No. 14-2 at PageID#s 254-255.)

On November 18, 2019, the BIA conducted a *de novo* review and dismissed the appeal. In relevant part, the BIA found as follows:

> We will affirm the Director's determination of fraud in the beneficiary's prior marriage. Section 204(c) of the Act provides for a mandatory bar to the approval of any subsequent visa petition filed on behalf of an alien who previously was found to have entered into a marriage in order to evade immigration laws. *Matter of Cabeliza*, 11 I&N Dec. 812 (BIA 1966). Our decision in *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990), states that the evidence of a fraudulent marriage "must be documented in the alien's file and must be substantial and probative." *Id*. at 167. Further, the "[D]irector should not give conclusive effect to determinations made in a prior proceeding." *Id*. at 168. Where the record contains evidence that the beneficiary married a United States citizen to evade immigration laws, the burden then shifts to the petitioner to establish that the beneficiary did not seek an immigration benefit based on a prior fraudulent marriage. *Matter of Kahy*, 19 I&N Dec. 803, 806-07 (BIA 1988).
>
> In this matter, the record contains the memorialization by a USCIS officer of a telephone conversation with the beneficiary's prior spouse, in which she admitted to marrying the beneficiary as a "favor" in view of his lack of immigration status but denied receiving compensation to do so. According to the notes of this telephone conversation, which occurred in August 2016, the former spouse stated that the beneficiary never lived with her and the marriage was never consummated. Furthermore, the former spouse stated that she was in a relationship with another man during her entire marriage to the beneficiary. On appeal, the petitioner submits a sworn affidavit from the beneficiary's prior spouse disavowing her August 2016 statements to users and stating that she did not marry the beneficiary for immigration

8

> reasons, but rather that she married him for bona fide reasons after knowing him for several years. *See* Petitioner's Br. at Attachment A. The petitioner does not indicate why this affidavit was not provided previously in response to the NOID. Therefore, we will not consider it for the first time on appeal. *See Matter of Fedorenko*, 19 I&N Dec. 57, 74 (BIA 1984).
>
> In view of the entire record including the prior spouse's statement to officers, her new affidavit, and the lack of evidence in the record indicating that the beneficiary and his prior spouse shared a bona fide relationship, we find that the evidence of a fraudulent marriage in this record is "substantial and probative" and that, therefore, the denial of the instant visa petition is supported on this record. *Matter of Tawfik*, 20 I&N Dec. at 167.

(Doc. No. 14-2 at PageID#s 205-206.)

### B. Procedural History in this Court

On April 14, 2020, Plaintiffs filed the instant action, challenging the denial of Ms. Singh's Form I-130 Petition. (Doc. No. 1.) The Complaint does not set forth specific Counts but, rather, sets forth a series of single-sentence paragraphs which it describes as "Claims." (*Id*. at pp. 7-8.) In these "Claims," Plaintiffs allege that the USCIS decision denying Ms. Singh's Form I-130 Petition:

- "violated the governing statute and regulations, is arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law;"

- "was improper, as USCIS based its conclusions on conjecture and speculation, instead of fact;"

- "is based on flawed reasoning;" and

- "is unsupported by the evidence in the record."

(*Id*. at p. 7.) In addition, Plaintiffs allege that the "decision denying Plaintiffs' 2015 I-130 Petition":

- "failed to reach an independent conclusion based on the evidence and violates *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990);"

- "was incorrect because Mr. Singh's file does not contain substantial and probative evidence that he attempted or conspired to enter into a marriage for the purpose of evading immigration laws;" and

9

- "failed to permit Plaintiffs' [sic] the opportunity to examine and rebut adverse evidence in violation of 8 C.F.R. § 103.2(b)(16)."

(*Id*.) Finally, Plaintiffs allege that their due process rights were violated because they were not given the opportunity to examine and rebut adverse evidence. (*Id*. at p. 8.)

On July 15, 2020, Defendants filed a Motion to Dismiss the Complaint in its entirety for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 5.) Plaintiffs opposed the Motion. (Doc. Nos. 6, 8.)

On January 22, 2021, the Court issued a Memorandum Opinion & Order granting in part and denying in part Defendants' Motion. (Doc. No. 10.) Specifically, the Court granted Defendants' Motion with respect to the Plaintiffs' claims that (1) the BIA decision is arbitrary and capricious because USCIS failed to provide Plaintiffs with the derogatory information that formed the basis of its finding of prior marriage fraud; (2) the BIA decision is arbitrary and capricious because it is based on evidence of prior marriage fraud that was developed years after the prior fraud allegedly occurred and is not contained in the "file" of the Petition pertaining to that previous marriage; and (3) their due process rights were violated because they were not given the opportunity to examine and rebut adverse evidence. (*Id*.) The Court denied Defendants' motion, however, with respect to Plaintiffs' claim that the BIA's finding of prior marriage fraud is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law because it is unsupported by the record and/or based on flawed reasoning. (*Id*.)

On February 2, 2021, the Court conducted a telephonic conference with counsel, at which time deadlines were set regarding the filing of the Certified Administrative Record and dispositive motions. Defendants thereafter filed an Answer and the Certified Administrative Record. (Doc. Nos. 11, 14.)

On April 14, 2021, Plaintiffs filed an "Objection to the Certified Administrative Record," which the Court determined should be construed as a Motion to Supplement the Record. (Doc. No. 15.) Defendants filed a response on May 14, 2021. (Doc. No. 17.) Plaintiffs did not file a Reply Brief in support of their Motion.

## II. Legal Standard

District courts have jurisdiction to review a decision on the merits of a Form I–130 petition to classify an alien as a relative of a United States citizen. *Adi v. U.S.,* 498 Fed. Appx. 478, 480 (6th Cir. 2012) (citations omitted). *See also Daraghma v. U.S. Citizenship and Immigration Services*, 228 F.Supp.3d 818, 822 (N.D. Ohio 2017). Pursuant to the APA, courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency decision is arbitrary and capricious if the agency fails to examine the relevant evidence or articulate a satisfactory explanation for the decision. *See Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006).

This standard of review is narrow and deferential, and courts "should accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole." *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). "Even when an agency explains its decision with less than ideal clarity," the decision will not be overturned "on that account if the agency's path may reasonably be discerned." *Bangura*, 434 F.3d at 502 (quoting *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004)). Courts should make a "searching and careful" inquiry into the facts, but an agency's factual findings should be accepted if they are supported by substantial evidence on the record. *See National Cotton Council of America v. US. EPA*, 553 F.3d 927, 934 (6th Cir. 2009);

*Ky. Waterways Alliance v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008). *See also Arkansas*, 503 U.S. at 113.

When courts review an agency decision, "[t]he APA requires courts to review the whole record or those parts of it cited by the party." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997) (internal quotation marks omitted). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) (citation omitted) (emphasis added). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cty.*, 286 F.3d 382, 387 (6th Cir. 2002) (citation and internal quotation marks omitted, alteration in original). *See also Little Traverse Lake Property Owners Ass'n v. National Park Service*, 883 F.3d 644, 658 (6th Cir. 2018).

The Sixth Circuit has found, however, that supplementation of the record may be appropriate under "exceptional circumstances." Such exceptional circumstances have been found, for example, "when an agency has deliberately or negligently excluded certain documents from the record, or when a court needs 'background' information to determine whether the agency has considered all relevant factors." *S. Forest Watch, Inc. v. Jewell*, 817 F.3d 965, 977 (6th Cir. 2016) (quoting *Latin Ams. for Soc. & Econ. Dev. v. Adm'r of the Fed. Highway Admin.*, 756 F.3d 447, 465 (6th Cir. 2014)). *See also Slater*, 120 F.3d at 638; *Little Traverse Lake Property Owners Ass'n*, 883 F.3d at 658; *Friends of Mahoning River v. United States Army Corps of Engineers*, 487 F.Supp.3d 638, 641 (N.D. Ohio 2020). A "strong showing of bad faith" may also justify supplementation of the record. *Little*

*Traverse Lake Property Owners Ass'n*, 883 F.3d at 658 (quoting *Charter Twp. of Van Buren v. Adamkus,* 1999 WL 701924 at *4 (6th Cir. Aug. 30, 1999)).

In considering whether to supplement the record, courts must bear in mind that an administrative agency's designation of its administrative record is entitled to a strong presumption of regularity. *Center for Biological Diversity v. U.S. Forest Service*, 2018 WL 7200718 at * 6 (S.D. Ohio 9/7/18) (citing *Hickey v. Chadick*, 2009 WL 3064445 at *2 (S.D. Ohio Sept. 18, 2009). "'The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary.'" *Id*. (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)).  The burden is upon plaintiff to justify supplementation of the record.  *Latin Ams. for Soc. & Econ. Dev.*, 756 F. 3d at 464–65 (6th Cir. 2014.  *See also Slater*, 120 F. 3d at 638.

### III. Analysis

In their Objection/Motion, Plaintiffs argue, summarily, that the Certified Administrative Record ("CAR") "does not contain the full record, only a recitation of evidence previously produced." (Doc. No. 15 at p. 2.)  Plaintiffs further assert that "the additional documentation that was provided nevertheless still omits information – either that can be logically deduced to be missing and/or which appears to be redacted or removed." (*Id*.)  Plaintiffs then identify six specific items of information which they claim have been improperly omitted from the record.  (*Id*. at pp. 2-3.)  Plaintiffs do not acknowledge the Sixth Circuit case law cited above or otherwise cite any legal authority in support of their Motion.

Defendants oppose Plaintiffs' Motion on numerous grounds.  (Doc. No. 17.)  Defendants argue that (1) the USCIS has expressly certified that the 434-page CAR in this case is complete, and (2) the CAR contains numerous materials that explicitly provide the reasons that the BIA affirmed

13

USCIS's denial of Plaintiff Vincent's I-130 visa. (*Id*. at pp. 2-4.) Defendants maintain that the CAR in this case is entitled to a presumption of regularity and completeness and that Plaintiffs have failed to carry their heavy burden of overcoming this presumption. (*Id*.) Defendants next argue that Plaintiffs' specific requests should be denied because they either seek (1) privileged information that is not subject to disclosure; (2) irrelevant information that is not necessary to resolution of the remaining issues in this case; or (3) information that does not exist. (*Id*. at pp. 4-10.) As discussed in more detail below, Defendants support these arguments with the Declaration of Fraud Detection and National Security Immigration Officer Amina Zinnerman, which is attached as an Exhibit to their Response. (Doc. No. 17-1.)

Plaintiffs did not file a Reply Brief in support of their Motion.

The Court will address each of Plaintiffs' specific requests for supplementation of the record, below.

A.      **Redacted Information in the August 11, 2016 "Statement of Findings"**

The first four items of information requested by Plaintiffs are located within a document in the CAR dated August 11, 2016 entitled "Statement of Findings" (hereinafter "SOF"). (Doc. No. 14-6 at PageID#s 568-573.)   First, Plaintiffs note that the very bottom of the first page (i.e., Doc. No. 14-6, PageID# 568) "contains information which has been cut off or removed from the record." (Doc. No. 15 at p. 2.) Second, Plaintiffs state that the entirety of the following page is "blank and contains no information." (*Id*.) Third, Plaintiffs object to the fact that the telephone number of Heidi Newrones has been redacted from the third page of the SOF (i.e., Doc. No. 14-6, PageID# 570.) Finally, Plaintiffs assert that "various information" has been redacted from the sixth page (i.e., Doc.

No. 14-6, PageID# 573), including the address of the neighbor of Plaintiff Vincent that was interviewed by USCIS. (Doc. No. 15 at p. 3.)

Defendants argue that the redacted information on the first and second pages of the SOF is "privileged information, including law enforcement sensitive internal USCIS database and systems checks and deliberative process notes that are not part of the CAR." (Doc. No. 17 at p. 7.) Defendants support this assertion with the Declaration of USCIS Field Officer Zinnerman, in which she avers that:

> I wrote the August 11, 2016 Statement of Findings in the above-captioned case. The bottom of page 1 through 2 consists of headings labelled II-V.A and contain check boxes and internal processing comment boxes.

(Doc. No. 17-1 at ¶ 4.) Citing numerous district court cases, Defendants argue that such information constitutes privileged, deliberative process information that is properly excluded from the CAR. (Doc. No. 17 at p. 7.)

As Plaintiffs failed to file a Reply Brief, they have offered no response to Defendants' argument. Nor have Plaintiffs offered any other legal basis for requiring Defendants to produce this information.

For the following reasons, the Court finds that Plaintiffs have failed to demonstrate that the CAR should be supplemented to include the redacted information in the first and second pages of the August 11, 2016 SOF. Field Officer Zinnerman, who prepared the document, has averred that the redacted information consists solely of internal processing material. Plaintiffs have come forward with no reasoned explanation or argument as how or why this material might be relevant to the BIA's decision to affirm the denial of Plaintiff Vincent's Petition. Nor have Plaintiffs argued, or demonstrated, that the redacted information on pages 1 and 2 of the SOF constitute "background"

information that is necessary for this Court to determine whether the agency has considered all relevant factors. *See S. Forest Watch, Inc.*, 817 F.3d at 977; *Latin Ams. for Soc. & Econ. Dev.*, 756 F.3d at 465. Nor have Plaintiffs even asserted (much less made) a "strong showing of bad faith" with regard to the redaction of this information. *Little Traverse Lake Property Owners Ass'n*, 883 F.3d at 658. Moreover, to the extent the redacted material constitutes deliberative intra-agency information, Defendants correctly note that courts have found that such material is ordinarily privileged. *See, e.g., Stand Up for California! v. United States Department of the Interior*, 315 F.Supp.3d 289, 293 (D.D.C. 2018) (citing *Amfac Resorts L.L.C. v. U.S. Dep't of Interior*, 143 F.Supp.2d 7, 13 (D.D.C. 2001)).

In sum, the Court finds that Plaintiffs have failed to carry their heavy burden of demonstrating that the CAR in this matter should be expanded to include the redacted information on pages 1 and 2 of the SOF. Plaintiffs' request for this information is, therefore, denied.

The Court also denies Plaintiffs' request that the record be supplemented to include the redacted telephone number of Heidi Newrones on the third page of the SOF (i.e., Doc. No. 14-6, PageID# 570.) Plaintiffs' claim that they require this telephone number in order to verify that Ms. Newrones was contacted "at the specified time and date" is disingenuous. As Defendants correctly note, there is no dispute as to whether USCIS telephoned Ms. Newrones. Indeed, in her August 2018 affidavit, Ms. Newrones herself states that she spoke with the USCIS officer by telephone on one occasion. (Doc. No. 14-2 at PageID# 254.) Under these circumstances, the Court finds that Plaintiffs have simply failed to articulate any reasoned explanation as to why the record should be supplemented to include this information. Plaintiffs' request is, therefore, denied.

Lastly, the Court denies Plaintiffs' request that the CAR be supplemented to include the redacted information on page 6 of the SOF. Two of the redactions on this page appear to be the

address of the neighbor of Plaintiff Vincent, to whom the USCIS officers spoke on August 10, 2016. (Doc. No. 14-6 at PageID# 573.) Plaintiffs offer no explanation or argument as to why they believe the record should be expanded to include this information. Specifically, Plaintiffs do not assert either that this information constitutes background information that is necessary to a determination of whether the agency has considered all relevant factors, and/or demonstrates bad faith on the part of the USCIS. *See Slater*, 120 F.3d at 638; *Little Traverse Lake Property Owners Ass'n*, 883 F.3d at 658. Nor have Plaintiffs sufficiently articulated why this information is relevant. Accordingly, Plaintiffs' request for this information is denied.

Page 6 of the SOF also appears to include an unidentified section in the middle of the page that is redacted. In her Declaration, Field Officer Zinnerman avers that "Section V.E, which is the one sentence in the middle on page 6 refers to an internal agency database entry and numerical code designation." (Doc. No. 17-1 at ¶ 4.) Defendants, therefore, assert that this redacted material is privileged and properly excluded from the record. (Doc. No. 17 at p. 9.) As noted above, Plaintiffs failed to file a Reply Brief.

In light of Officer Zinnerman's averment, and Plaintiffs' failure to oppose Defendants' argument that this redacted information is privileged, the Court finds that Plaintiffs have failed to demonstrate that the CAR should be supplemented to include this information. Accordingly, the Court denies Plaintiffs' request that the CAR be supplemented to include the information redacted from the middle of page six of the SOF.

> **B.     Notes, Recordings, and/or Transcripts of USCIS' attempted in-person interview of Ms. Newrones in August 2016**

Plaintiffs next request that the Court order Defendants to "produce any notes, recordings, and/or transcripts of the attempted in-person interview with Ms. Newrones conducted on or around

17

August 11, 2016." (Doc. No. 15 at p. 3.) Plaintiffs' entire argument as to this request is as follows: "At the time of this attempted interview, Ms. Newrones was not present and USCIS officers supposedly spoke to Ms. Newrones' daughter, Shelby Brown. ECF No. 14-2 at p. 74, ¶ 4. The CAR is devoid of any evidence that this interview ever occurred." (*Id*.)

In response, Defendants argue that there is no documentation responsive to this request. (Doc. No. 17 at pp. 9-10.) Defendants direct this Court's attention to Field Officer Zinnerman's Declaration, in which she avers as follows:

> To the best of my recollection, on August 10, 2016, I participated in an attempted site visit to 649 Winslow Drive, an address FDNS believed to be the residence of Heidi Newrones. I did not encounter Heidi Newrones at that address at that time. The next day, I made contact with Ms. Newrones by telephone. The summary of my August 11, 2016, telephonic conversation with Ms. Newrones is documented in the Statement of Findings dated August 11, 2016. I have no information on a person named Shelby Brown.

(Doc. No. 17-1 at ¶ 2.) In light of the above, Defendants argue that "Plaintiffs' request for documentation of an *attempted* in person-interview that never occurred, and documentation of an alleged conversation with an unknown person that is not mentioned in any of the agency decisions is nonsensical at best." (Doc. No. 17 at p. 10) (emphasis in original).

The Court agrees with Defendants.  Plaintiffs' speculation that documentation might exist (regarding either the attempted in-person meeting with Ms. Newrones or the alleged conversation with her daughter) does not overcome the general presumption of regularity that review is limited to the record compiled by the agency.  *See, e.g., Taylor Energy Co. v. United States*, 2021 WL 538052 at *8 (D.D.C. Feb. 15, 2021) (holding that plaintiff's speculation that other documents "must exist" does not overcome presumption that administrative record was complete); *Stand Up for California!*, 315 F. Supp. 3d at 295-96 (holding that agency "is entitled to a presumption that it properly compiled

the record, and the Plaintiffs' speculation that other documents may exist is not an 'unusual circumstance' warranting supplementing the record"). *See also Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 371 (D.D.C. 2007); *Save Barton Creek Ass'n v. Texas Dep't of Transportation*, 2021 WL 3849723 (W.D. Tex. Aug. 27, 2021).

The Court finds Plaintiffs' speculation that additional documents might exist fails to sustain their burden to show an unusual circumstance requiring supplementation of the CAR. Accordingly, this request is denied.

### D. Recording and/or Transcript of USCIS' Telephone Interview of Ms. Newrones on August 11, 2016

Lastly, Plaintiffs ask the Court to order Defendants to "produce any recording and/or transcript, if such exists, of the interview of Ms. Newrones, which occurred telephonically on August 11, 2016." (Doc. No. 15 at p. 3-4.) Plaintiffs argue that such a recording and/or transcript is critical evidence in light of alleged contradictions between the interviewer's summary notes of the telephone conversation and Ms. Newrones' August 2018 affidavit. (*Id*. at pp. 3-4.)

In response, Defendants state that "no such recording exists." (Doc. No. 17 at p. 10.) As evidence of this, Defendants point to Field Officer Zinnerman's Declaration, in which she avers that:

> I conducted the telephonic interview of Heidi Newrones on August 11, 2016. There is no electronic or audio recording of the telephonic interview with Heidi Newrones, conducted on August 11, 2016.

(Doc. No. 17-1 at ¶ 3.)

The Court cannot order supplementation of the record with evidence that does not exist. Accordingly, and in light of the above, Plaintiffs' request is denied.

IV. **Conclusion**

For all the foregoing reasons, Plaintiffs' Objection to the Certified Administrative Record is without merit and overruled.

**IT IS SO ORDERED.**

                                                     *s/Pamela A. Barker*
                                                     PAMELA A. BARKER
Date: September 2, 2021                           U. S. DISTRICT JUDGE