# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Ranjit Singh**, *et al.*, | **Case No. 1:20cv799** |
| **Plaintiffs,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **United States of America, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants** | |

This matter concerns the denial of a Form I-130 Petition for Alien Relative ("Form I-130 Petition") filed by Plaintiff Kristine Singh (hereinafter "Mrs. Singh") on behalf of her husband Plaintiff Ranjit Singh (hereinafter "Mr. Singh"). Mrs. Singh's Form I-130 Petition was denied by the United States Citizenship and Immigration Services ("USCIS") and the denial was affirmed by the Board of Immigration Appeals ("BIA"). Plaintiffs seek review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*

Currently pending is Plaintiffs' Motion for Summary Judgment. (Doc. No. 19.) Also pending is the Motion for Summary Judgment of Defendants United States of America; Merrick Garland, Attorney General of the United States; Alejandro Mayorkas, Secretary of the Department of Homeland Security ("DHS"); Ur Mendoza Jaddou, Director of USCIS; Brian Spalter, District Director of USCIS District N12; and Karyn Zarlenga, Cleveland Field Office Director of USCIS.[1]

---

[1] In the Complaint, Plaintiffs name William Barr as the U.S. Attorney General, Chad Wolf as the Secretary of the Department of Homeland Security, Mark Koumans as the Director of USCIS and Mark Hansen as the District Director of USCIS. (Doc. No. 1.) Pursuant to Fed. R. Civ. R. 25(d), Merrick Garland, Alejandro Mayorkas, Ur Mendoza Jaddou, and Brian Spalter are substituted in place of these Defendants, respectively. (Doc. No. 20 at fn 1.)

(Doc. No. 20.)  The parties have each filed Briefs in Opposition to the opposing side's Motions.  (Doc. Nos. 21, 23.)  In addition, Defendants filed a Reply in support of their Motion for Summary Judgment on January 5, 2022.  (Doc. No. 24.)

For the following reasons, Plaintiffs' Motion for Summary Judgment (Doc. No. 19) is DENIED, and Defendants' Motion for Summary Judgment (Doc. No. 20) is GRANTED.

## I.     Background

### A.     Factual Background and Administrative Proceedings

In September 1990, Mr. Singh entered the United States without inspection at or near Brownsville, Texas.[2]  (Doc. No. 14 (CAR)[3] at PageID#s 183, 600, 614.)  Eleven years later, in 2001, Mr. Singh married Heidi Newrones (hereinafter "Ms. Newrones"), a United States citizen.  (CAR at PageID#s 183, 599.)  Ms. Newrones subsequently filed a Form I-130 Petition on Mr. Singh's behalf, and Mr. Singh concurrently filed a Form I-485 Application to Register Permanent Residence or Adjust Status.[4]  (CAR at PageID#s 183, 588-597.)  Ms. Newrones' I-130 Petition is part of the record on appeal, as well as the following documents: (1) passport style photos of Mr. Singh and Ms. Newrones; (2) Ms. Newrones' birth certificate; (3) Mr. Singh's and Ms. Newrones' marriage certificate; and (4) documentation from the former United States Immigration and Naturalization

---

[2] At that time, Mr. Singh was using the name Jasbir Singh-Kaur.  (Doc. No. 14 at PageID#s 603, 604.)

[3] The Certified Administrative Record ("CAR") in this case is located at Doc. No. 14.  The Court will cite to specific pages in the CAR by the PageID#(s) located at the top of the page.

[4] As discussed *infra*, the Immigration and Nationality Act ("INA") provides that U.S. citizens may file a Form I-130 petition for classification of their alien spouse as "immediate relative status."  8 U.S.C. § 1154.  When a United States citizen files a Form I-130 Petition, the government is required to review and adjudicate the petition.  8 U.S.C. §§ 1151(b)(2)(A)(i), 1154.  If the Form I-130 Petition is approved, the non-citizen spouse may apply for lawful permanent resident status.  *See* 8 U.S.C. § 1255(a).  *See Makhamreh v. Attorney General Dep't of Justice,* 2020 WL 6146593 at * 4 (S.D. Ohio Oct. 20, 2020); *Sholanke v. U.S. Citizenship & Immigration Services*, 2020 WL 1452449 at *4 (N.D. Ohio March 25, 2020), *aff'd* 854 Fed Appx 23 (6th Cir. 2021).

Service ("INS") from March 1991 relating to Mr. Singh's deportation proceedings.  (CAR at PageID#s 588-597.)

The marriage between Mr. Singh and Ms. Newrones came to an end in 2003.  Specifically, a Petition for Dissolution of Marriage was filed on June 11, 2003 and an Entry and Decree of Dissolution of Marriage was thereafter issued on August 28, 2003.  (CAR at PageID#s 493-494.) Two years later, in August 2005, Ms. Newrones's Form I-130 Petition was denied "as the marriage between Mr. Singh and Ms. Newrones was terminated."[5]  (CAR at PageID#s 582-585.)

Several years later, on May 6, 2013, Mr. Singh married Plaintiff Kristine Singh (then-known as Kristine Vincent) in Cleveland, Ohio.  (CAR at PageID#s 183, 491-492.)  In November 2015, Mrs. Singh filed the instant Form I-130 Petition on Mr. Singh's behalf.  (CAR at PageID#s 472-567.)  Mrs. Singh submitted various evidence in support of the Petition, including (1) joint checking account statements; (2) bank cards; (3) a copy of a lease agreement for Plaintiffs' marital residence; (4) various bills in Mr. Singh's name; (5) a Verizon wireless call log; (6) copies of Plaintiffs' marriage license and marriage record; (7) a copy of the Separation Agreement and Entry and Decree of Dissolution of Marriage between Mr. Singh and Ms. Newrones; (8) six notarized statements attesting to the validity of Plaintiffs' marriage; and (9) copies of various photographs.  *(Id.)*.

In March 2016, Mr. and Mrs. Singh appeared for an interview with an Immigration Services officer in connection with the Form I-130 Petition.  (CAR at PageID# 184, 568.)  Based on statements made by Plaintiffs during the interview, and USCIS's review of the evidence submitted, USCIS determined that "the testimony and documentary evidence in the record did not establish the claimed

---

[5] In addition, Mr. Singh's Form I-485 Petition filed in conjunction with Ms. Newrones' I-130 Petition was administratively closed "as USCIS did not have jurisdiction to adjudicate the application, as Mr.  Singh was still under the jurisdiction of the Immigration Judge."  (CAR at PageID# 183.)

3

relationship" between Mr. and Mrs. Singh.  (CAR at PageID# 184.)  USCIS therefore referred Mrs.

Singh's Form I-130 Petition for "further investigation regarding the bona fides of [Plaintiffs'] current

marriage and [Mr. Singh's] prior marriage to Heidi Newrones."  (*Id*.)

Immigration officials subsequently contacted Ms. Newrones by telephone in August 2016

regarding her previous marriage to Mr. Singh.  (CAR at PageID# 570.)   USCIS summarized its

telephone conversation with Ms. Newrones in a written "Statement of Findings" as follows:

> IO Zinnerman spoke with Heidi FREDRICKSON (aka: NEWRONES).   [Newrones]
> stated in the telephonic interview she met the beneficiary through a friend who worked
> with the beneficiary's cousin and had known him for 7 years prior to marriage.
> [Newrones] admitted the beneficiary asked her several times to marry him as a favor
> before she complied.  [Newrones] stated she was nervous and was never comfortable
> with the issue, however complied with his request to marry him as a favor because she
> felt bad and was concerned for his safety if he returned to India.  [Newrones] stated
> they signed a lease together at 147 Deerfield Lane, Aurora, OH; however, the
> beneficiary never moved in with her.  [Newrones] stated the beneficiary was supposed
> to move in with her at the Deerfield location but he never moved in.  [Newrones] stated
> she recalls the beneficiary living in Maple Heights at the time she lived on Deerfield
> Lane. [Newrones] stated the beneficiary paid half of the rent because he was scheduled
> to move in but when he did not move in, she stopped taking half of the rent money
> and her sister later moved in with her at the Deerfield location.  [Newrones] stated she
> never consummated the marriage with the beneficiary, and never had a bona fide
> boyfriend/girlfriend relationship with the beneficiary.  [Newrones] stated very few
> people knew about the marriage with the beneficiary, with her children and father
> finding out on 8/10/2016.  [Newrones] stated she was in a relationship with David
> FREDRICKSON since the end of 2000 and was dating DAVID the entire time of the
> marriage with the beneficiary.  [Newrones] stated the beneficiary did not promise her
> anything and she did not receive any money from him for agreeing to the fraudulent
> marriage.  [Newrones] stated when she filed for divorce so that she could freely marry
> DAVID, in which [sic] the beneficiary got upset and wanted her to stay married in
> order to continue with the immigration process. [Newrones] admitted it was not a real
> marriage.

(*Id*.)

That same month, USCIS also conducted an unannounced visit to Plaintiffs' marital residence

as part of its further investigation regarding Mrs. Singh's Form I-130 Petition.  (CAR at PageID#

4

571.)  The Immigration officers noted that Mr. Singh was not at the residence at the time of the visit and, further, that a visual inspection of the residence revealed "minimum [sic] personal belongings" of Mr. Singh.[6]  (CAR at PageID# 571-572.)  The officers further noted that there were no daily transactions or withdrawals in the Plaintiffs' joint checking account and that Mrs. Singh admitted she had a personal account at a different bank which she used on a daily basis.  (*Id.*)  The officers also noted that Mrs. Singh was unable to provide either an address for Mr. Singh's work location or his hourly work schedule.  (*Id.*)

The USCIS officers then visited the home of Mrs. Singh's mother, Linda Abood.  (CAR at PageID# 572.)  According to the officers, Ms. Abood did not know Mr. Singh's last name and made several statements that contradicted statements made by Mrs. Singh.  (*Id.*)  Lastly, the USCIS officers visited one of Plaintiffs' neighbors.  (CAR at PageID# 573.)  This neighbor was able to identify Mrs. Singh and her two children but did not recognize a photo of Mr. Singh.  (*Id.*)

On August 10, 2017, USCIS issued a Notice of Intent to Deny ("NOID") Mrs. Singh's Form I-130 Petition.  (CAR at PageID#s 194-203.)  Therein, the USCIS advised Mrs. Singh that the evidence supporting the Form I-130 Petition was insufficient to establish eligibility for the benefit sought.  (*Id.*)  Specifically, the NOID cited the discrepancies discussed above and stated as follows:

> The record contains substantial and probative evidence establishing that the beneficiary entered into his marriage to Heidi Newrones for the purpose of evading the Immigration laws on [sic] the United States.  Newrones told USCIS her marriage to the beneficiary was to help him obtain an immigration benefit.  She further stated they never lived together, never consummated their marriage, and that she maintained an intimate relationship with a man who later became her spouse.  Therefore, USCIS finds that the approval of your Form 1-130 is prohibited under INA 204(c).

_____

[6] During the March 2016 interview, Plaintiffs stated that Mr. Singh worked in Akron and that he sometimes spent the night in Akron with a friend because he (Mr. Singh) did not have a driver's license and Mrs. Singh did not drive on the highway.  (CAR at PageID# 184.)

> Further you have not established by [] clear and convincing evidence the bonafides of your marriage to the beneficiary.  Even though you submitted bank account statements for your joint bank account from Fifth Third Bank, it is not sufficient to establish a commingling of funds or that the account is used for normal household expenses.  You have not demonstrated that you and the beneficiary commingled financial assets and that together [sic] maintained the responsibility for common marital responsibilities.  Also, the beneficiary's minimum personal belongings in your marital residence has [sic] failed to establish that you are residing together.

(CAR at PageID#s 199-200.)  The NOID then advised Mrs. Singh that she had thirty (30) days from the date of the Notice to "submit documentation and/or testimony to refute the determination of USCIS and establish your eligibility for the benefit sought."  (*Id*. at PageID# 200.)

On September 18, 2017, Mrs. Singh responded to the NOID and submitted additional pieces of evidence in support of the Petition, including (1) a brief from Plaintiffs' attorney; (2) copies of Plaintiffs' joint bank statements and personal money orders; (3) Plaintiffs' utility bills; and (4) affidavits from Mrs. Singh, Mr. Singh, and Mrs. Singh's son M. R.  (CAR at PageID#s 187, 350-467.)  Of particular relevance, in his Affidavit, Mr. Singh addressed the issues raised by USCIS regarding his previous marriage to Ms. Newrones, as follows:

> 4.     I married my first wife in good faith.  At that time, I was a truck driver.
>
> 5.      As a truck driver, I traveled long distances over the roads, taking loads very often out of state and being away from my home for several days during the week.
>
> 6.     Unknown to me, my wife took a lover. It was a devastating blow to me.
>
> 7.     Because of what she did, I did not feel I could remain in the marital residence anymore or be intimate with her anymore. That is the explanation of why I did not continue in my relationship with my ex-wife.
>
> 8.     I did not pay my ex-wife any money, nor did I make her any promises or give her anything in return for marrying me. We married for love (or so I thought).
>
> 9.      I am more than happy to explain these issues to USCIS at any interview that USCIS wishes to schedule.

6

\*\*\*

13.     The USCIS alleges that I committed fraud in my first marriage.  I did not do so. \*\*\*

\*\*\*

17.     I do not have any copies or paperwork, affidavits or statements from any of the parties involved including my first wife and now Kristine.  If USCIS wishes that Kristine rebut its allegations, it should provide Kristine with a copy of all documents, statements, or derogatory evidence against me.

(CAR at PageID#s 374-375.)  In her Affidavit, Mrs. Singh avers that USCIS's allegation that Mr. Singh committed immigration fraud by marrying Ms. Newrones "was before my time with Ranjit and I know nothing of it."  (CAR at PageID# 370.)  She complains that "USCIS has . . . not provided any proof or documentation of these allegations, only mere statements."  (*Id*.)

Subsequently, on May 2, 2018, Mrs. Singh submitted additional evidence in support of the Petition, after requesting and receiving information in response to a Freedom of Information Privacy Act ("FOIA") request.  (CAR at PageID#s 333- 349.)  The additional evidence submitted in support of the Petition included the following: (1) a brief from Plaintiffs' attorney; (2) copies of letters from USCIS's FOIA Operations division; (3) copies of six redacted affidavits obtained via Plaintiffs' FOIA request; and (4) copies of an Immigration Officer's notes, also obtained via the FOIA request.  (*Id.*)

On July 13, 2018, USCIS issued a lengthy decision in which it denied Mrs. Singh's Form I-130 Petition.  (CAR at PageID#s 181-190.)  After discussing all of the above in detail, the USCIS first determined that "the record contains substantial and probative evidence establishing that the beneficiary entered into his marriage to Heidi Newrones for the purpose of evading the Immigration laws o[f] the United States."  (CAR at PageID# 186.)  The decision further explains:

7

Newrones told USCIS her marriage to the beneficiary was to help him obtain an immigration benefit. She further stated they never lived together, never consummated their marriage, and that she maintained an intimate relationship with a man who later became her spouse.  Therefore, USCIS finds that the approval of your Form 1-130 is prohibited under INA 204(c).

\*\*\*

You have not directly addressed several allegations from the NOID, and have merely asserted that you have no knowledge of the adverse information.  USCIS provided you with the adverse information and put you on notice with the NOID.  Generally, USCIS gives great weight to Officers' first-hand observations.

You have failed to provide evidence normally associated with a marriage to demonstrate a commingled family relationship such as but not limited to:  joint ownership of assets or property, bank statements that show shared financial obligations and household expenses, utility bills, credit card statements, loan documents, etc. for the marriage of the beneficiary and Ms. Newrones.  You have failed to establish that the beneficiary resided in a marital relationship with his prior spouse, Ms. Newrones.

Based on a review of the record, USCIS finds that the approval of your Form 1-130 is prohibited under INA 204(c).

(CAR at PageID# 186, 189.)  In addition, the USCIS discussed the evidence regarding the marriage between Mr. Singh and Mrs. Singh and determined that "you have failed to demonstrate by a preponderance of the evidence that you and your spouse have entered into a *bona fide* marital relationship and not for the purpose of obtaining immigration benefits for your spouse."  (CAR at PageID#s 184-189.)

On August 9, 2018, Mrs. Singh timely appealed the USCIS decision to the BIA.  (CAR at PageID# 216, 223.)  On September 10, 2018, Mrs. Singh, through counsel, submitted a brief in support of the appeal, which included additional evidence in support of her Petition.  (CAR at PageID#s 237-307.)  This additional evidence included (1) affidavits from Ms. Newrones, Mr. Singh, and Mrs. Singh; (2) a lease agreement for Plaintiffs' marital residence; (3) letters from loved ones

attesting to the validity of Plaintiffs' marriage; and (4) Plaintiffs' utility bills, joint bank account statements, and an auto insurance policy.  (*Id.*)  In her appellate brief, Mrs. Singh acknowledged that some of this evidence was new and had not previously been submitted to the USCIS.[7]  (CAR at PageID# 239, 242.)  Of particular note, Mrs. Singh submitted, for the first time, an affidavit from Ms. Newrones dated August 30, 2018, in which she recants the statements she made to USCIS in August 2016 (hereinafter "Newrones Recantation Affidavit").  Specifically, Ms. Newrones avers as follows:

1.  I was formerly married to Ranjit Singh. We later divorced and I then married my current husband, and took his last name, "Fredrickson."

2.  I married Ranjit in good faith, and because I loved him.

3.  As I asserted to the USCIS-- nobody paid me or gave me anything of value to induce me to marry Ranjit.

4.  When USCIS agents spoke to me to investigate my marriage to Ranjit, they did not even pay me a visit.  They spoke to me only via telephone.  USCIS had previously come to my home, but I was not there.  They supposedly spoke to my daughter, Shelby Brown.  Shelby lived with her dad and came to my home only every other week.  Shelby knew very little about my adult life.

5.  After the USCIS visit to my home, USCIS made no attempt to contact me in person.  The USCIS agent spoke to me just once by telephone when I had severe back pain and was going to have surgery, and never ever got back to me.  The following is the gist of that one conversation via telephone, as best as I can remember.  I have never spoken to USCIS in person.

6.  The USCIS officer accused me of entering into a sham marriage to help Ranjit get his "green card." The USCIS officer accused me of "defrauding the USA" or something like that, and threatened me with jail time, fines, or both.  I was in severe pain and awaiting back surgery.  I was weak and felt alone.  I was vulnerable and felt threatened.  The USCIS officer saw my weakness and coerced me into saying things that were not true.

7.  Hence I want to set the record straight:

---

[7] In her appellate brief, Mrs. Singh does not explain why this new evidence could not have been submitted previously. (CAR at PageID#s 237-253.)  Nor does her appellate brief cite any legal authority for the proposition that the BIA may consider new evidence on appeal.  (*Id.*)

a.  I did live with Ranjit; we had a lease for our apartment at 147 Deerfield Lane in Aurora, OH.  As my husband, Ranjit did pay half the rent.

b. I did consummate my marriage with Ranjit; I lied earlier because I felt threatened and ashamed, thinking that USCIS would besmirch my reputation before my family and children.

c. I shared a joint bank account with Ranjit at First National Bank of Ohio, (now PNC Bank), Aurora, Ohio into which we deposited money we earned and paid our bills.  Ranjit did contribute to our household.

d. My children loved Ranjit; he used to do things with them, such as take them to get ice cream as a treat.  My children still love him.

e. My sister . . . knew I was married to Ranjit.

f. I did not marry Ranjit as a "favor," as the USCIS states.  I knew Ranjit for several years before we got married.  I got to know and love the kind of man that he was.

g. Ranjit told me openly about his immigration status, because he did not want to "surprise" me or make me feel like he had married me just so I could help him.  I married Ranjit because I loved him and because when you love someone, you want to help them.

8.    Our marriage fell apart because of Ranjit's work schedule - as a truck driver, he was gone from our home for extended periods of time and I became lonely. I really needed a husband and a father for my children.

9.    Ranjit is a really, really good guy. If he were not, I would not have married him.

10.   I married Ranjit in good faith, for love, and not for money, or to help him with "immigration."

11.   I am able to state these facts now because I am strong in my marriage and trust my husband, and my husband understands the prior relationship I had with Ranjit.

(CAR at PageID#s 254-255.)

10

On November 18, 2019, the BIA conducted a *de novo* review and dismissed the appeal.  In

relevant part, the BIA found as follows:

> We will affirm the Director's determination of fraud in the beneficiary's prior marriage.
> Section 204(c) of the Act provides for a mandatory bar to the approval of any
> subsequent visa petition filed on behalf of an alien who previously was found to have
> entered into a marriage in order to evade immigration laws.  *Matter of Cabeliza*, 11
> I&N Dec. 812 (BIA 1966).  Our decision in *Matter of Tawfik*, 20 I&N Dec. 166 (BIA
> 1990), states that the evidence of a fraudulent marriage "must be documented in the
> alien's file and must be substantial and probative." *Id*. at 167.  Further, the "[D]irector
> should not give conclusive effect to determinations made in a prior proceeding." *Id*. at
> 168.  Where the record contains evidence that the beneficiary married a United States
> citizen to evade immigration laws, the burden then shifts to the petitioner to establish
> that the beneficiary did not seek an immigration benefit based on a prior fraudulent
> marriage.  *Matter of Kahy*,19 I&N Dec. 803, 806-07 (BIA 1988).
>
> In this matter, the record contains the memorialization by a USCIS officer of a
> telephone conversation with the beneficiary's prior spouse, in which she admitted to
> marrying the beneficiary as a "favor" in view of his lack of immigration status but
> denied receiving compensation to do so.  According to the notes of this telephone
> conversation, which occurred in August 2016, the former spouse stated that the
> beneficiary never lived with her and the marriage was never consummated.
> Furthermore, the former spouse stated that she was in a relationship with another man
> during her entire marriage to the beneficiary.  On appeal, the petitioner submits a
> sworn affidavit from the beneficiary's prior spouse disavowing her August 2016
> statements to USCIS and stating that she did not marry the beneficiary for immigration
> reasons, but rather that she married him for bona fide reasons after knowing him for
> several years.  *See* Petitioner's Br. at Attachment A.  The petitioner does not indicate
> why this affidavit was not provided previously in response to the NOID.  Therefore,
> we will not consider it for the first time on appeal.  *See Matter of Fedorenko*, 19 I&N
> Dec. 57, 74 (BIA 1984).
>
> In view of the entire record including the prior spouse's statement to officers, her new
> affidavit, and the lack of evidence in the record indicating that the beneficiary and his
> prior spouse shared a bona fide relationship, we find that the evidence of a fraudulent
> marriage in this record is "substantial and probative" and that, therefore, the denial of
> the instant visa petition is supported on this record.  *Matter of Tawfik*, 20 I&N Dec. at
> 167.

(CAR at PageID#s 205-206.)

**B.    Procedural History in this Court**

11

On April 14, 2020, Plaintiffs filed the instant action, challenging the denial of Mrs. Singh's Form I-130 Petition.  (Doc. No. 1.)  The Complaint does not set forth specific Counts but, rather, sets forth a series of single-sentence paragraphs which it describes as "Claims."  (*Id*. at pp. 7-8.)  In these "Claims," Plaintiffs allege that the USCIS decision denying Mrs. Singh's Form I-130 Petition: (1) "violated the governing statute and regulations, is arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law;" (2) "was improper, as USCIS based its conclusions on conjecture and speculation, instead of fact;" (3) "is based on flawed reasoning;" and (4) "is unsupported by the evidence in the record."  (*Id*. at p. 7.)  In addition, Plaintiffs allege that the "decision denying Plaintiffs' 2015 I-130 Petition": (1) "failed to reach an independent conclusion based on the evidence and violates *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990);" (2) "was incorrect because Mr. Singh's file does not contain substantial and probative evidence that he attempted or conspired to enter into a marriage for the purpose of evading immigration laws;" and (3) "failed to permit Plaintiffs' [sic] the opportunity to examine and rebut adverse evidence in violation of 8 C.F.R. § 103.2(b)(16)."  (*Id*.)  Finally, Plaintiffs allege that their due process rights were violated because they were not given the opportunity to examine and rebut adverse evidence. (*Id*. at p. 8.)

On July 15, 2020, Defendants filed a Motion to Dismiss the Complaint in its entirety for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 5.)  Plaintiffs opposed the Motion.  (Doc. Nos. 6, 8.)

On January 22, 2021, the Court issued a Memorandum Opinion & Order granting in part and denying in part Defendants' Motion.  (Doc. No. 10.)  Specifically, the Court granted Defendants' Motion with respect to Plaintiffs' claims that (1) the BIA decision is arbitrary and capricious because

USCIS failed to provide Plaintiffs with the derogatory information that formed the basis of its finding of prior marriage fraud; (2) the BIA decision is arbitrary and capricious because it is based on evidence of prior marriage fraud that was developed years after the prior fraud allegedly occurred and is not contained in the "file" of the Petition pertaining to that previous marriage; and (3) their due process rights were violated because they were not given the opportunity to examine and rebut adverse evidence.  (*Id*.)  The Court denied Defendants' motion, however, with respect to Plaintiffs' claim that the BIA's finding of prior marriage fraud is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law because it is unsupported by the record and/or based on flawed reasoning.  (*Id*.)  Rather, the Court concluded that that claim "will have to be resolved after the Administrative Record is filed with the Court and the parties have submitted briefing with respect thereto."  (*Id*. at p. 27.)

On February 2, 2021, the Court conducted a telephonic conference with counsel, at which time deadlines were set regarding the filing of the Certified Administrative Record and dispositive motions.  Defendants thereafter filed the Certified Administrative Record on March 18, 2021.[8]  (Doc. No. 14.)

On October 30 and November 1, 2021, respectively, the parties filed their cross Motions for Summary Judgment.  (Doc. Nos. 19, 20.)  Defendants filed a Brief in Opposition to Plaintiffs' Motion for Summary Judgment on November 29, 2021.  (Doc. No. 21.)  Plaintiffs did not file a Reply. Meanwhile, on December 10, 2021, Plaintiffs sought leave to file, *instanter*, their untimely Brief in

---

[8] On April 14, 2021, Plaintiffs filed an "Objection to the Certified Administrative Record," which the Court determined should be construed as a Motion to Supplement the Record.  (Doc. No. 15.)  Defendants filed a response on May 14, 2021.  (Doc. No. 17.)  On September 2, 2021, the Court issued a Memorandum Opinion & Order denying Plaintiffs' "Objection." (Doc. No. 18.)

13

Opposition to Defendants' Motion for Summary Judgment.  (Doc. No. 22.)  This motion was unopposed and granted.  Defendants thereafter filed a Reply in support of their Motion for Summary Judgment on January 5, 2022.  (Doc. No. 24.)

## II.    Legal Standards

### A.    Motion for Summary Judgment

As an initial matter, the Sixth Circuit has noted that the summary judgment standard may not be appropriate when it comes to judicial review of an agency's actions under the APA because it invites "improper consideration of evidence outside the administrative record and reliance upon *post hoc* rationalizations for the agency's action."  *Alexander v. Merit Sys. Protection Bd.,* 165 F.3d 474, 480-81 (6th Cir. 1999).  Nevertheless, a court "may enter judgment in response to a motion for summary judgment so long as the proper standard of review is used."  *Taco Especial v. Napolitano*, 696 F. Supp. 2d 873, 877 (E.D. Mich. 2010) (citing *Alexander*, 165 F.3d at 480-81).  *See also, e.g., Daraghma v. U.S. Citizenship and Immigration Services*, 228 F. Supp. 3d 818, 822 (N.D. Ohio 2017); *Sholanke*, 2020 WL 1452449 at * 4.  Summary judgment is appropriate when it "serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review."  *Singh v. Johnson*, 2016 WL 3476701 at *1 (E.D. Mich. Jun. 27, 2016); *see also Sholanke*, 2020 WL 1452449 at * 4.

### B.    The Administrative Procedure Act ("APA")

District courts have jurisdiction to review a decision on the merits of a Form I–130 petition to classify an alien as a relative of a United States citizen.  *Adi v. U.S.,* 498 Fed. Appx. 478, 480 (6th Cir. 2012) (citations omitted).  *See also Daraghma*, 228 F.Supp.3d at 822.  Pursuant to the APA,

14

courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency decision is arbitrary and capricious if the agency fails to examine the relevant evidence or articulate a satisfactory explanation for the decision. *See Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006).

This standard of review is narrow and deferential, and courts "should accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole." *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992). "Even when an agency explains its decision with less than ideal clarity," the decision will not be overturned "on that account if the agency's path may reasonably be discerned." *Bangura*, 434 F.3d at 502 (quoting *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004)). Courts should make a "searching and careful" inquiry into the facts, but an agency's factual findings should be accepted if they are supported by substantial evidence on the record. *See National Cotton Council of America v. US. EPA*, 553 F.3d 927, 934 (6th Cir. 2009); *Ky. Waterways Alliance v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008). *See also Arkansas*, 503 U.S. at 113.

When courts review an agency decision, "[t]he APA requires courts to review the whole record or those parts of it cited by the party." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997) (internal quotation marks omitted). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) (citation omitted) (emphasis added). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Kroger Co. v. Reg'l*

15

*Airport Auth. of Louisville & Jefferson Cty.*, 286 F.3d 382, 387 (6th Cir. 2002) (citation and internal quotation marks omitted, alteration in original). *See also Little Traverse Lake Property Owners Ass'n v. National Park Service*, 883 F.3d 644, 658 (6th Cir. 2018).

A court must not substitute its judgment for that of the agency and it cannot reweigh the evidence if the agency's conclusion was reasonable. *See Daraghma*, 228 F. Supp. 3d at 822. Instead, "the evidence 'must compel a different decision to be arbitrary and capricious.'" *Id.* (quoting *Adi v. United States,* 2011 WL 9613 at * 5 (N.D. Ohio Jan. 3, 2011), *aff'd* 498 Fed. Appx 478 (6th Cir. 2012)).

## C.     Legal Framework for I-130 Visa Petitions

To determine whether the agency's decision in the instant case is "otherwise not in accordance with law" under the APA, 5 U.S.C. § 706(2)(A), the Court looks to the law and regulations governing I-130 Petitions, summarized below.

When a United States citizen marries a non-citizen immigrant, there is a process the couple may go through to obtain permanent residence or other adjustment in immigrant status for the noncitizen spouse. *See* 8 C.F.R. §§ 204.1, 204.2. *See also El Mokhamad v. Kelly*, 2018 WL 488953 at * 1 (E.D. Mich. Jan. 19, 2018). The first step in that process is a Form I-130 Petition which, if approved, allows a citizen to obtain an immigrant visa for an immediate relative. 8 U.S.C. § 1154(b). *See also Sholanke*, 854 Fed. Appx. at 27. In order to guard against individuals attempting to subvert immigration laws by fraudulently claiming marriage, USCIS investigates each couple seeking approval of a Form I-130 Petition. The investigation may include interviews of the couple, their friends, and/or family. *See* 8 C.F.R. § 103.2(b). USCIS may also review the couples' financial records and consider their daily activities such as whether they live together and whether they associate with

16

one another's friends and family.  Petitioners may submit evidence of a *bona fide* marriage to USCIS throughout this process, but they are not afforded a hearing prior to USCIS issuing its decision.  It is the petitioner's burden to establish eligibility in visa petition proceedings.  *See Matter of Brantigan*, 11 I&N Dec. 493, 495 (BIA 1966); *Makhamreh*, 2020 WL 6146593 at * 4.

A visa petition may be denied pursuant to 8 U.S.C. § 1154(c) (also known as INA § 204(c)) where there is evidence in the record to indicate that an alien previously conspired to enter into a fraudulent marriage.  *Matter of Laureano*, 19 I&N Dec. 1 (BIA 1983).  Specifically, Section 204(c) of the INA states:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c); INA § 204(c).  Once it is determined that a beneficiary entered a prior marriage for the purpose of evading immigration laws, all subsequent I-130 Petitions filed on behalf of that beneficiary must be denied.  *See* 8 U.S.C. § 1154(c); *Makhamreh*, 2020 WL 6146593 at * 5.

As the Sixth Circuit recently explained, "when evaluating whether a marriage is fraudulent, i.e., having been entered into for the purpose of evading the immigration laws, '[t]he 'central question' in determining whether a sham marriage exists is whether the parties 'intended to establish a life together at the time they were married.'" *Sholanke*, 854 Fed. Appx. at 27 (quoting *Matter of Singh*, 27 I&N Dec. 598, 601 (B.I.A. 2019)).[9]  The agency applies the "substantial and probative"

---

[9] In *Matter of P. Singh*, 27 I.& N. Dec. 598 (BIA 2019), the BIA analyzed the phrase "substantial and probative evidence" and explained the type and extent of evidence necessary to meet that standard in determining marriage fraud under INA § 204(c). Although *Singh* is a 2019 decision issued after the agencies' decisions in this case, the BIA stated that its

evidence standard. *See Sholanke*, 854 Fed. Appx. at 27; *Singh*, 27 I&N Dec. at 602. A reasonable inference of fraud is not sufficient to meet this standard, and the standard is "higher than a preponderance of the evidence and closer to clear and convincing evidence." *Matter of Singh*, 27 I&N Dec. at 607. *See also Sholanke*, 854 Fed. Appx. at 27. It must be "more than probably true that the marriage is fraudulent." *Matter of Singh*, 27 I&N Dec. at 607. "Direct evidence of fraud is not required." *Sholanke,* 854 Fed. Appx. at 27. The USCIS officer examining whether the § 1154(c) bar applies ordinarily "should not give conclusive effect to determinations made in a prior proceeding" regarding whether the individual had entered or attempted to enter into a marriage for the purpose of evading immigration law, "but, rather, should reach his own independent conclusion based on the evidence before him." *Matter of Tawfik*, 20 I&N Dec. 166, 168 (B.I.A. 1990). *See also Sholanke*, 854 Fed. Appx. at 27.

Where "there is evidence in the record to indicate that the beneficiary has been [involved] in a marriage fraud conspiracy, ... USCIS must advise the petitioner of any derogatory evidence." *Matter of Singh*, 27 I&N Dec. at 605 (quoting *Matter of Kahy*, 19 I&N Dec. 803, 806–07 (B.I.A. 1988)). The burden then shifts to the petitioner "to establish that the beneficiary did not seek ... status based on a prior fraudulent marriage" by submitting additional evidence showing there was not substantial and probative evidence in the record of marriage fraud. *Id. See also Sholanke*, 854 Fed. Appx. at 27. The petitioner must do so by a preponderance of the evidence. *Id.* "Minor inconsistencies" and "limited" documentary evidence should be considered when assessing whether

---

decision is consistent with the standard it had been applying in adjudicating visa petitions involving marriage fraud. *Id*. at 607. In the instant case, both parties cite the *Singh* decision repeatedly throughout their briefing. The Court will therefore rely on the BIA's decision in *Singh* in analyzing the type and extent of evidence necessary to satisfy the "substantial and probative" standard of proof. *See also Shewchun v. Holder*, 658 F.3d 557, 561-62 (6th Cir. 2011) (noting that federal courts give "substantial deference" to the "BIA's interpretation of the INA and accompanying regulations").

18

the marriage is fraudulent, but without more, these factors are likely insufficient to constitute substantial and probative evidence. *Id*. at 609. On the other hand, evidence of deliberate deception regarding cohabitation "strongly indicate[s] fraud." *Id*.

## III.    Analysis

The sole remaining issue in this matter is whether the BIA's determination that the marriage between Mr. Singh and Ms. Newrones was fraudulent is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

Defendants argue that they are entitled to judgment in their favor on this issue because the BIA's finding of prior marriage fraud was reasonable and supported by substantial and probative evidence. (Doc. No. 20-1 at pp. 11-15.) Defendants note that the BIA cited directly to evidence in the record, including, most notably, the USCIS officer's memorialization of the August 2016 telephone conversation with Ms. Newrones in which she admitted that she married Mr. Singh as a "favor," never lived with him, and never consummated their marriage. (*Id*.) Defendants further assert that the BIA acknowledged Ms. Newrones' Recantation Affidavit but properly declined to consider it because it was not first submitted to the USCIS in response to the NOID. (*Id*.) Lastly, Defendants note that the BIA also properly relied on the absence of any supporting documentation regarding the validity of the Singh-Newrones marriage. (*Id*.) In light of the above, Defendants argue that the BIA's determination should be upheld because the agency "examined all of the relevant facts and articulated a satisfactory explanation for its action." (*Id*.)

Plaintiffs assert that the BIA's decision is not supported by substantial and probative evidence because it "rests solely on a telephone conversation with Ms. Newrones" reflected in a "simple memorialization" created by a USCIS officer. (Doc. No. 23 at p. 4.) *See also* Doc. No. 19 at pp. 7-

19

11. Plaintiffs argue that this memorialization is insufficient to support the BIA's decision because it is "a single paragraph" and the "record contains no signature from Ms. Newrones, no recording of this conversation, and no indication that is contents were verified and validated by Ms. Newrones." (Doc. No. 19 at p. 8; Doc. No. 23 at p. 4.) By contrast, Plaintiffs argue, Ms. Newrones later "provided a signed affidavit repudiating this conversation and stating that she was threatened and coerced into making false statements during the telephone conversation with the USCIS officer." (Doc. No. 23 at p. 4; Doc. No. 19 at p. 8-9.)

Plaintiffs further assert that, while the BIA acknowledged the existence of the Newrones Recantation Affidavit, it improperly declined to consider it on appeal. (Doc. No. 23 at p. 2-3; Doc. No. 19 at p. 8-11.) Specifically, Plaintiffs argue the BIA failed to sufficiently address the fact that "the record contains a conflicting account of the pivotal piece of evidence utilized by the agency in denying Plaintiffs' petition." (Doc. No. 23 at pp. 2-3; Doc. No 19 at pp. 8-9.) Plaintiffs maintain that the BIA decision is, therefore, arbitrary and capricious because the BIA failed to consider the evidence as a whole and, further, failed to articulate a "satisfactory explanation" for its decision. (*Id*.) Thus, Plaintiffs maintain that the BIA's factual findings are not conclusive and this Court should consider the Newrones Recantation Affidavit in determining whether there is substantial and probative evidence supporting the finding of prior marriage fraud.[10] (*Id*.)

---

[10] Plaintiffs also argue, at some length, that the USCIS's determination that the marriage between Mr. and Mrs. Singh is fraudulent is not supported by substantial and probative evidence. (Doc. No. 19 at pp. 11-14.) That issue, however, is not part of this appeal. In its January 22, 2021 Memorandum Opinion & Order, this Court carefully examined the Complaint and construed it as challenging the BIA's November 2019 decision only. (Doc. No. 10 at p. 17.) The Court further determined that "in light of the fact that the BIA limited its decision to the issue of prior marriage fraud with respect to the marriage between Mr. Singh and Ms. Newrones, the Court finds that Plaintiffs' APA claims are limited to challenging the BIA's decision with respect to that issue." (*Id*. at pp. 17-18.) Thus, this Court need not (and will not) consider Plaintiffs' arguments in their summary judgment motion regarding the USCIS's finding that the marriage between Mr. and Mrs. Singh was fraudulent.

For the following reasons, the Court finds that the BIA decision is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. As an initial matter, the Court rejects Plaintiffs' argument that the BIA improperly declined to consider the Newrones Recantation Affidavit. In the NOID, the USCIS expressly advised Plaintiffs that it intended to deny Mrs. Singh's Petition "because the record contains substantial and probative evidence establishing that [Mr. Singh] entered into his marriage to Heidi Newrones for the purpose of evading the Immigration laws of the United States." (CAR at PageID# 199.) Notably, the NOID (1) advised Mrs. Singh that immigration officers spoke to Ms. Newrones in August 2016; and (2) recounted Ms. Newrones' statements to the officers that she married Mr. Singh "as a favor," that Mr. Singh never lived with her, that the marriage was never consummated, and that she was in a relationship with another man throughout the entirety of her marriage to Mr. Singh. (*Id.*) Mrs. Singh was provided thirty (30) days to respond to the NOID with additional evidence to refute the USCIS's preliminary finding. (CAR at PageID# 200.)

While Mrs. Singh did, in fact, submit additional evidence to the USCIS in response to the NOID, it is undisputed that she did not submit Ms. Newrones' Recantation Affidavit to the USCIS,[11] instead submitting it for the first time to the BIA on appeal. In its decision, the BIA expressly acknowledges Ms. Newrones' Recantation Affidavit and explains that "petitioner does not indicate why this affidavit was not provided previously in response to the NOID" and "[t]herefore we will not consider it for the first time on appeal." (CAR at PageID# 206.)

On appeal to this Court, Plaintiffs likewise fail to offer any explanation regarding why they could not have obtained Ms. Newrones' Affidavit and submitted it to the USCIS in response to the

---

[11] Ms. Newrones executed her Recantation Affidavit on August 30, 2018, over a month after the USCIS issued its July 13, 2018 decision denying Mrs. Singh's I-130 Petition. *See* CAR at PageID#s 181-190, 254-255.

NOID.  Nor do Plaintiffs cite any legal authority for the proposition that, under these circumstances, the BIA was nonetheless required to address Ms. Newrones' Affidavit.  To the contrary, the BIA has expressly held that it will not consider new evidence on appeal where the petitioner had notice of deficiencies and the opportunity to present such evidence earlier.  *See* 8 C.F.R. § 1003.1(d)(3)(iv)(A) ("The Board will not engage in factfinding in the course of deciding cases.... "); *Matter of Soriano*, 19 I&N Dec. 764, syllabus ¶ 4 (BIA 1988) ("Where the petitioner was put on notice of the required evidence and given a reasonable opportunity to provide it for the record before the visa petition is adjudicated, evidence submitted on appeal will not be considered for any purpose, and the appeal will be adjudicated based on the record of proceedings before the [USCIS]."); *Matter of Obaigbena*, 19 I&N Dec. 533, syllabus ¶ 4 (BIA 1988) (same). *See also Koffi v. Holder,* 487 Fed. Appx. 658, fn 1 (2nd Cir. 2012) (noting that "the BIA was not required to consider any new evidence not before the district director").  Federal courts accord "substantial deference to the BIA's interpretation of the INA and accompanying regulations" unless that interpretation is "arbitrary, capricious, or manifestly contrary to statute." *Shewchun*, 658 F.3d at 561 (citing *Khalili v. Holder,* 557 F.3d 429, 435 (6th Cir. 2009)).  *See also Gazeli v. Sessions*, 856 F.3d 1101, 1105 (6th Cir. 2017).

Here, USCIS notified Mrs. Singh of the statements made by Ms. Newrones during her August 2016 conversation with Immigration officers and provided Mrs. Singh the opportunity to refute those statements.  Mrs. Singh failed to submit Ms. Newrones' Recantation Affidavit to USCIS in response to the NOID and Plaintiffs have not offered any explanation or argument justifying the failure to do so.  Under these circumstances, the Court finds that Plaintiffs have not shown that it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law for the BIA to decline to consider Ms. Newrones' Recantation Affidavit for the first time on appeal.  The Court likewise rejects

Plaintiffs' arguments that the BIA's refusal to consider this Affidavit results in a finding that the BIA failed to consider the evidence as a whole and/or "sufficiently address the conflict in the record."

Having determined that the BIA reasonably declined to consider this evidence, the Court next considers whether, based on the evidence that was properly before it, the BIA acted arbitrarily, capriciously, and/or not in accordance with law when it determined that the marriage between Mr. Singh and Ms. Newrones was fraudulent.  For the following reasons, the Court finds that it did not.

In its decision, the BIA expressly indicated that it conducted a *de novo* review of the record of proceedings, including the USCIS's July 2018 Decision; the August 2017 NOID; Mrs. Singh's response to the NOID; and her brief on appeal.  (CAR at PageID# 205.)  The BIA discussed INA § 204(c) and correctly stated that evidence of a fraudulent marriage must be "substantial and probative." (*Id*.) (citing *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990)).  The BIA then noted that the record contains the memorialization by a USCIS officer of the August 2016 telephone conversation with Ms. Newrones, in which "she admitted marrying the beneficiary as a 'favor' in view of his lack of immigration status" and that "the beneficiary never lived with her and the marriage was never consummated." (CAR at PageID#s 205-206.)  The BIA also noted that Ms. Newrones told the USCIS officers that "she was in a relationship with another man during her entire marriage to the beneficiary."  (*Id*.)  Lastly, the BIA noted the "lack of evidence in the record indicating that the beneficiary and his prior spouse shared a bona fide relationship."  (*Id*.)  Based on the above, the BIA concluded that there was substantial and probative evidence that Mr. Singh's marriage to Ms. Newrones was fraudulent. (*Id*.)

Upon review, the Court agrees that Ms. Newrones' statements to USCIS officers, combined with the lack of any documentation or other objective evidence that the marriage between Mr. Singh

and Ms. Newrones was *bona fide* at its inception, constitutes substantial and probative evidence to support the denial of Mrs. Singh's Petition.  *See, e.g., Matter of Singh*, 27 I&N Dec. at 610 (finding that "[t]he admission of the beneficiary's wife during the site visit that her marriage to the beneficiary is a sham is the most direct evidence of fraud"); *Adi*, 498 Fed. Appx. at 482-483 (affirming denial of I-130 Petition where petitioner "was free to submit other evidence of the validity of [the beneficiary's prior marriage], including proof of the couple's wedding reception, joint tax returns, proof of commingled assets or liabilities, joint bank accounts, and other proof of a shared life, but failed to do so"); *Gadzhieva v. Lynch*, 2017 WL 11457230 at * 7 (S.D. Ohio July 20, 2017) (affirming denial of I-130 Petition where "Plaintiffs failed to provide USCIS with any affirmative evidence whatsoever that would demonstrate shared property, residence, experiences, or relationships between Ms. Gadzhieva and [her prior spouse]").

The Court rejects Plaintiffs' argument that USCIS's memorialization of its telephone conversation with Ms. Newrones does not constitute "substantial and probative" evidence because it is not a sworn statement and was not video/audio recorded, transcribed, and/or read back to her to "validate its contents."  (Doc. No. 19 at p. 8, 10.)  Plaintiffs cite no legal authority in support of this argument.  To the contrary, it is well established that, in making a marriage fraud determination, USCIS "may rely on *any* relevant evidence" (including documentation of immigration officers' site visits and conversations with individuals with relevant knowledge) so long as the evidence relied upon creates "more than a reasonable inference of fraud."  *Matter of Tawfik*, 20 I. & N. Dec. at 168 (emphasis added).  Indeed, in *Matter of Singh, supra*, the BIA affirmed the denial of a I-130 Petition based, in part, on a report that documented a conversation that occurred with immigration officers

during a site visit to the marital residence of the beneficiary and his spouse.[12] *Matter of Singh*, 27 I&N Dec. at 599. In that report, the officers stated that the beneficiary's spouse made many inconsistent statements and ultimately "admitted that she married the beneficiary as a favor" to allow him to remain in the United States. *Id*. at 600. The USCIS issued a NOID based on a finding of marriage fraud. In response to the NOID, the petitioner submitted an affidavit from the beneficiary's wife, in which she denied admitting that the marriage was a sham. *Id*. In addition, petitioner submitted utility bills, tax returns, bank statements, and affidavits from acquaintances of the beneficiary and his wife to support the contention that their marriage was *bona fide*. *Id*. The USCIS then issued a decision denying the Petition based on a finding that there was substantial and probative evidence of marriage fraud. *Id.*

On appeal, the BIA discussed, at some length, the meaning and application of the "substantial and probative evidence" standard of proof. *Id*. at 602-610. The BIA explained that "[t]he application of the 'substantial and probative evidence' standard requires the examination of all of the relevant evidence and a determination as to whether such evidence, when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent." *Id*. While "[a] sworn statement by the parties admitting that the marriage is fraudulent . . . and that the couple did not intend to live together or consummate the marriage is direct evidence of fraud that is 'substantial and probative,'" the BIA explained that "an admission or other such direct evidence is not necessary to establish marriage fraud." *Id*. Rather, "neither the statute, the regulation, nor our own precedent prohibits us from

---

[12] In *Singh*, the petitioner was the son of the beneficiary. *Matter of Singh*, 27 I&N Dec. at 599. The beneficiary was married to the petitioner's maternal grandmother. *Id*. The beneficiary's wife had previously filed a visa petition on the beneficiary's behalf, which the agency denied in November 2009 on the basis that the marriage was entered into solely to obtain an immigration benefit for the beneficiary. *Id*. In 2012, the beneficiary's son filed a visa petition on behalf of the beneficiary. *Id*.

relying on circumstantial evidence, which may alone be sufficient to constitute 'substantial and probative' evidence of marriage fraud under section 204(c)."  *Id.*

Applying this standard to the case before it, the BIA affirmed the denial of the I-130 petition, finding that "[t]he admission of the beneficiary's wife during the site visit that her marriage to the beneficiary is a sham is the most direct evidence of fraud." *Id.* at 610.  The BIA explained that "[a]lthough the beneficiary's wife has subsequently denied making this statement, her admission was recorded by Government officials in the course of conducting an investigation,[13] and the petitioner has not overcome the presumption that such officials properly discharge their duties in good faith." *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (holding that "in the absence of clear evidence to the contrary, courts presume that [Government officials] have properly discharged their official duties" (citation omitted)).  The BIA further found that the Director "properly gave greater weight to the site visit report than to other evidence of record, including the evidence submitted in response to the [NOID], and she reached her own independent conclusion based on the evidence before her." *Id.* at 611.

Likewise, here, the USCIS officers created a written record of their August 2016 conversation with Ms. Newrones, in which they documented her statements that she married Mr. Singh "as a favor because she felt bad and was concerned for his safety if he returned to India."  (CAR at PageID# 570.)  Ms. Newrones also admitted that Mr. Singh "never moved in with her;" "she never

---

[13] The Court construes the BIA's use of the term "recorded by government officials" as referring to the officers' notes and written record of their conversation with the beneficiary's wife, rather than to a video or audio recording.  The BIA decision itself does not reference an audio or video recording of this conversation, or any transcript that would likely have been created of such an audio/video recording. Moreover, and notably, the BIA decision goes to reference the presumption that the immigration officers properly discharged their duties in good faith, which implies that no such recording or transcript exists.  Indeed, if an audio or video recording existed, the BIA would not need to rely on such a presumption but, rather, could review the audio or video recording itself.

consummated the marriage with [Mr. Singh] and never had a boyfriend/girlfriend relationship with [Mr. Singh];" and "she was in a relationship with [her current husband David Frederickson] … the entire time of the marriage with the beneficiary." (*Id*.) This report identifies the date of the interview and the name of the immigration officer that conducted the interview. (*Id*.) The report was accurately summarized in the NOID and Mrs. Singh was given thirty days to refute this evidence. (CAR at PageID#s 197-198.)

Just as in *Matter of Singh, supra*, Ms. Newrones' admission that her marriage to Mr. Singh was a sham "is the most direct evidence of fraud." *Matter of Singh*, 27 I&N Dec. at 610. Moreover, Plaintiffs have failed to identify any evidence properly in the record before the BIA that would overcome the presumption that the immigration officers "properly discharge[d] their duties in good faith" when interviewing Ms. Newrones and recording the content of that interview.[14] *Id. See also Njie v. Garland*, 2021 WL 4596099 at * 2 (6th Cir. Oct. 6, 2021).

Additionally (and notwithstanding Plaintiffs' argument to the contrary), the BIA did not solely rely on Ms. Newrones' statements to the USCIS officers when it denied her Petition. Rather, the BIA also expressly relied on "the lack of evidence in the record indicating that the beneficiary and his prior spouse shared a bona fide relationship." (CAR at PageID# 206.) As noted above, once the USCIS issued its NOID advising Mrs. Singh of the evidence that Mr. Singh's prior marriage to Ms. Newrones was fraudulent, the burden shifted to Mrs. Singh to establish by a preponderance of the evidence that the prior marriage was not, in fact, fraudulent. *See Sholanke*, 854 Fed. Appx. at 27-28.

---

[14] As noted *supra*, Mrs. Singh failed to submit Ms. Newrones' Recantation Affidavit in response to the NOID (and failed to provide any explanation for her failure to do so) and, therefore, that Affidavit was not properly before the BIA. The Court does note, in passing, that, in her Recantation Affidavit, Ms. Newrones does not deny making the above statements to immigration officers. Rather, Ms. Newrones acknowledges making the statements but offers an explanation as to why she made them, i.e., that she was coerced and/or threatened by the immigration officers.

She could have done so by submitting documentary or other objective evidence of the validity of that marriage, including "proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences." *Laureano*, 19 I. & N. at 3.

Despite having the opportunity to do so, however, Mrs. Singh failed to submit any objective evidence to the USCIS demonstrating that the Singh-Newrones marriage was *bona fide*. For example, Mrs. Singh did not submit any documentation to the USCIS showing that Mr. Singh and Ms. Newrones listed each other as spouses on their insurance policies, filed joint tax returns, shared a joint bank account, or otherwise commingled their assets and property. Nor did Mrs. Singh provide any other objective evidence regarding the validity of Mr. Singh's prior marriage, such as photographs of Mr. Singh's and Ms. Newrones' wedding ceremony or other shared experiences, or affidavits from friends and family members regarding the validity of that marriage. The BIA did not act arbitrarily and capriciously when it relied on this lack of evidence to deny Mrs. Singh's Petition. *See, e.g., Sholanke*, 854 Fed. Appx. at 28; *Adi*, 498 Fed. Appx. at 482-483; *Gadzhieva*, 2017 WL 11457230 at * 7.

The Court also rejects Plaintiffs' argument that the BIA decision was not supported by substantial and probative evidence because it failed to mention or adequately account for Mr. Singh's affidavit in which he attested to the validity of his marriage to Ms. Newrones. In its decision, the BIA expressly states that it reviewed, *de novo*, the record of proceedings, including the response to the NOID. (CAR at PageID# 205.) As discussed *supra*, Mr. Singh's affidavit was submitted in response to the NOID. (CAR at PageID# 368, 374-375.)

28

The BIA's "decision is entitled to a presumption of regularity and thus a presumption that the evidence was considered." *Aoraha v. Gonzales*, 209 Fed. Appx 473, 476 (6th Cir. 2006). *See also, e.g., Araujo-Padilla v. Garland*, 854 Fed. Appx 646, 650 (6th Cir. 2021) (rejecting argument that the BIA failed to properly weigh certain hardship elements because "the Board expressly stated that it 'consider[ed] the totality of the respective hardship factors'" and, thus, such a decision was entitled to a presumption that the BIA considered the evidence). Indeed, the BIA is not required to "exhaustively analyze every individual piece of evidence and each individual subargument" before it. *Kilic v. Barr*, 965 F.3d 469, 474 (6th Cir. 2020). Rather, it is sufficient that the BIA "consider the issues raised[ ] and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Scorteanu v. I.N.S.*, 339 F.3d 407, 412 (6th Cir. 2003) (internal quotation omitted). Here, although the BIA did not specifically mention Mr. Singh's affidavit, it did expressly state that it reviewed the response to the NOID, which includes Mr. Singh's affidavit. Plaintiffs' argument that the BIA decision is arbitrary and capricious because it failed to expressly discuss this affidavit is without merit.

Finally, to the extent Plaintiffs argue that the BIA decision is arbitrary and capricious because it should have accorded more weight to Mr. Singh's affidavit, this argument is also without merit. The BIA is permitted to weigh the evidence and make a determination that other evidence in the record (or the absence thereof) is sufficient to overcome averments in an affidavit. *See Sholanke*, 854 Fed. Appx. at 28. Moreover, it is well-established that federal courts are not permitted to re-weigh the evidence before the BIA. As the Sixth Circuit has explained, "our task is not to reweigh the evidence and determine which of the competing views is more compelling. It is instead to ensure that substantial evidence supports the BIA's judgment." *Karnaukh v. Mukasey*, 263 Fed. Appx. 460,

465 (6th Cir. 2008) (quoting *Gonahasa v. INS*, 181 F.3d 538, 543 (4th Cir. 1999)).  Because this is a "deferential standard of review," the Court "may not reverse the BIA's decision simply because [it] might have decided the matter differently."  *Id.* (citing *Koliada v. INS*, 259 F.3d 482, 487-88 (6th Cir. 2001)).  For all the reasons discussed at length above, the Court finds that the BIA's decision is supported by substantial and probative evidence.  This Court may not re-weigh Mr. Singh's affidavit against the other evidence in the record (including USCIS's memorialization of Ms. Newrones' statements) and substitute its judgment for that of the agency.  *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009).

In sum, the BIA reviewed the evidence properly in the record and provided sufficient reasoning for its decision.  The decision of the BIA is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Accordingly, Plaintiffs' Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted.

## IV.    Conclusion

For all the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Doc. No. 19) is DENIED and Defendants' Motion for Summary Judgment (Doc. No. 20) is GRANTED.

**IT IS SO ORDERED.**


    *s/Pamela A. Barker*
    PAMELA A. BARKER
Date: June 21, 2022    U. S. DISTRICT JUDGE